603 A.2d 197

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Maxine READING.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1991.

Filed Feb. 10, 1992.

6/1/90, at 18–19). Furthermore, the master noted no signs of intoxication. (*Id.* at 19).

240

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellant.

Thomas R. Quinn, Philadelphia, for appellee.

Before WIEAND, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

The Commonwealth appeals from the judgment of sentence entered against Maxine Reading on February 19, 1991. We vacate the judgment of sentence and remand for resentencing.

On July 15, 1990, Edward Plummer left the apartment in which he resided with Maxine Reading at 10:00 p.m. and

returned at approximately 3:00 a.m. When he returned, Plummer asked Reading if she feared being alone. Reading responded that she had not been frightened because she could have protected herself with Plummer's .38 caliber revolver which he kept under his pillow. Reading then took the revolver from underneath the pillow to demonstrate to Plummer that she knew how to use it. While showing Plummer the revolver, Reading heard a pop which sounded like a firecracker. Plummer turned around, walked out of the bedroom and fell down. Realizing that she had shot Plummer, Reading ran downstairs to the landlord and asked him to call the police. Later that morning, Plummer died as a result of a single gunshot wound to the chest.

Reading was arrested and charged with Murder, Voluntary Manslaughter, Involuntary Manslaughter and Possession of an Instrument of Crime. She waived a jury trial and was found guilty of Involuntary Manslaughter and acquitted of Possessing an Instrument of a Crime. At the sentencing hearing, the court stated that the standard range under the guidelines for Involuntary Manslaughter with a prior record score of zero was zero to twelve months. The prosecutor agreed, but argued that the deadly weapon enhancement provision of the sentencing guidelines, 204 Pa.Code § 303.4(a) applied, making the standard range 12–36 months. The court rejected the Commonwealth's contention, refused to apply the weapon enhancement provision and sentenced Reading to a term of five years' probation conditioned upon her continuing to attend counseling. On February 27, 1991, the Commonwealth filed a Motion to Reconsider Sentence which was denied.

On appeal, the Commonwealth contends 1) that the sentencing court erred in failing to apply the deadly weapon enhancement provision of the sentencing guidelines when it determined the guideline ranges applicable to Reading's Involuntary Manslaughter conviction; 2) that the sentencing court erred in failing to state specific reasons for deviating from the guidelines; and 3) that the court erred in imposing a more lenient sentence on the ground that the

homicide was "accidental" after specifically stating at trial that the "gun cannot go off accidentally," and that it did not "think th[e] case [was] an accident." N.T., November 15, 1990, at 212, 220.

After careful consideration of the relevant statutes and caselaw, we are constrained to vacate appellant's sentence for Involuntary Manslaughter. We do so in response to the Commonwealth's first issue and the sentencing court's refusal to apply the deadly weapon enhancement provision of the sentencing code. Based upon our disposition of the first issue, we need not consider the Commonwealth's second issue, however, to provide guidance on remand, we will address the Commonwealth's third issue.

■ Initially, we note that the Commonwealth appeals the discretionary aspects of the sentence. *See, Commonwealth v. Jones,* 523 Pa. 138, 565 A.2d 732 (1989); 42 Pa.C.S. § 9781(b). In order for the reviewing court to examine the sentence, appellant must present a substantial question. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987). The definition of a substantial question is found in *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115 (1987). The definition states that appellant must advance a colorable argument that the sentence is inconsistent with the sentencing code, or that the sentence violates a fundamental norm underlying the sentencing process. As we find the appearance of a substantial question presented by the Commonwealth on appeal, this Court grants allowance of appeal from the discretionary aspects of the sentence imposed upon Reading. *See Commonwealth v. Dotzman,* 403 Pa.Super. 325, 588 A.2d 1312 (1991) (substantial question raised as to whether sentence is appropriate under the sentencing guidelines where trial court held inapplicable the provisions of 204 Pa.Code § 303.4).

■ In reviewing a judgment of sentence, we may remand where the trial court erroneously failed to consider the deadly weapon enhancement provision of the guidelines.

*Commonwealth v. Johnakin,* 348 Pa.Super. 432, 502 A.2d 620 (1985). Sentencing Guidelines, 204 Pa.Code § 303.4, reprinted following 42 Pa.C.S. § 9721, provides:

### § 303.4. Deadly weapon enhancement

(a) When the court determines that the defendant *possessed a deadly weapon,* as defined in 18 Pa.C.S.A. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement *shall be added to the guideline sentence range* which would otherwise have been applicable (emphasis added).

▮ The court below believed that § 303.4 should not apply on the basis of its conclusion that Reading did not "possess a deadly weapon" within the meaning of the section. The court held that the .38 revolver which killed the victim was not a "deadly weapon," because Reading did not specifically intend to kill with it.

In its Opinion, the trial court stated:

A plain reading of Section 2301 shows that for a firearm to constitute a deadly weapon, the weapon must have been used or intended to be used in a manner calculated or likely to produce death or serious bodily injury. . . . Accordingly, Section 2301 requires proof of a certain intent in the use of a firearm before a sentencing court may apply the deadly weapon enhancement provision.

Opinion, May 24, 1991, at page 8.

We disagree with the court's interpretation of Section 2301. Deadly weapon is defined at 18 Pa.C.S. § 2301 as follows:

**Deadly weapon.**—*Any firearm,* whether loaded or unloaded, *or* any device designed as a weapon and capable of producing death or serious bodily injury, *or* any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury (emphasis added).

A plain reading of the statute reveals that *any* firearm is a deadly weapon, without regard to the mental state of the

defendant who has been convicted of criminal homicide. We find no support for the contention that the deadly weapon enhancement provision of the sentencing guidelines is inapplicable to Involuntary Manslaughter convictions, nor has Reading directed us to any such authority.

Here, the facts are undisputed. Reading, in an act of "total recklessness," pulled the trigger while showing Plummer that she knew how to use his gun. N.T., November 15, 1990, at 221. Clearly, the court was required to apply the deadly weapon enhancement when calculating the guideline range applicable to Reading's Involuntary Manslaughter conviction. *Commonwealth v. Cornish*, 403 Pa.Super. 492, 589 A.2d 718 (1991).

We have repeatedly held that it is imperative that the sentencing court determine the correct starting point in the guidelines before sentencing outside those guidelines. *Johnakin*, 348 Pa.Super. at 438, 502 A.2d at 623. In this case, the trial court determined the minimum sentence range under the guidelines based on the incorrect conclusion that it was not required to consider the weapon enhancement provision. Accordingly, Reading's sentence must be vacated and the case remanded for resentencing after consideration of the appropriate guidelines, including the deadly weapon enhancement provision. *See Cornish*, 403 Pa.Super. at 497, 589 A.2d at 721. If the court then finds it appropriate to deviate from the guidelines, it must place its reasons for the deviation on the record. *Id.*

Next, we address the Commonwealth's contention that the trial court's verdict and the trial court's statements of record concerning the nature of the crime cannot be reconciled with the court's basis for imposing a more lenient sentence. Specifically, the Commonwealth argues that at trial, the court expressly rejected Reading's "accidental shooting" theory of defense, while in its Opinion the court refers to the shooting as "accidental." At trial, the court addressed Reading's claim that the gun had been fired accidentally as follows:

[The court]: This gun did not go off by itself. The only way this gun goes off is if somebody pulls the trigger.

N.T., November 15, 1990, at 210–211.

When defense counsel argued that Reading had claimed the shooting was accidental, the court responded:

[The Court]: I know, but we can't take her word for it ... you have to use the rules of logic, physics ... I mean, this gun cannot go off accidentally.

*Id.* at 212.

The court concluded:

[The Court]: I don't think this case is an accident, I really don't. I think that when she said, I knew something stupid was going to happen, what she meant was that she should not have pulled the trigger. I do. But I don't think she meant to kill him. But kill him she did.

*Id.* at 220.

The trial court acknowledged the possibility that the failure to apply the deadly weapon enhancement provision might be held erroneous, and therefore attempted to provide for this situation by including its reasons for deviating from the guidelines. Opinion, May 24, 1991, at 9. The court explained that it would have imposed the same probationary sentence, even had it determined that the deadly weapon enhancement provision was applicable for the following reasons:

Ms. Reading, age thirty-three, had no prior record. *Moreover, the death in this case resulted from an accidental shooting of her long time companion while she was showing him that she knew how to use his gun.*

Opinion, May 24, 1991, at 9–10 (emphasis added).

■ Initially, we note that an anticipatory statement such as this made by the trial court does not preclude remand. *Johnakin,* 348 Pa.Super. at 438, 502 A.2d at 623.

■ The Commonwealth implies that the sentencing court's use of the word "accidental" of its Opinion was an attempt to change the original verdict in order to justify a more lenient sentence. Opinion, May 23, 1991, at 9. As-

suming that the trial court was attempting to enter a verdict different than that which it entered on November 15, 1990, we would be compelled to reject any such alteration. An attempt to modify or explain, at this late stage, an already clear verdict must be ineffective. *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975); *Commonwealth v. Dunn*, 478 Pa. 35, 385 A.2d 1299 (1978). We are not convinced, however, that the court's mention of "accidental" in its Opinion was an attempt to modify its original verdict. Rather, when read in the context of the trial court's complete Opinion, it is clear that the trial court merely concluded that the shooting was not intentional. This finding is entirely consistent with Reading's conviction and may be considered by the sentencing court upon remand.

Based upon the foregoing, Judgment of Sentence is vacated and the case is remanded so that the sentencing court may resentence in accordance with this decision. Jurisdiction is relinquished.