**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2384 EDA 2017 |
| DOMINICK  FELDER | : | |

Appeal from the Judgment of Sentence June 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011035-2015,
CP-51-CR-0011036-2015, CP-51-CR-0011037-2015,
CP-51-CR-0011038-2015, CP-51-CR-0011039-2015,
CP-51-CR-0011040-2015, CP-51-CR-0011041-2015,
CP-51-CR-0011042-2015, CP-51-CR-0011116-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 02, 2018**

The Commonwealth of Pennsylvania appeals from nine separate judgments of sentence,[1] entered in the Court of Common Pleas of Philadelphia County, imposing an aggregate sentence of 11½-23 months of imprisonment, followed by 10 years of probation, upon Appellee, Dominick Felder.  After careful review, we vacate and remand for resentencing.

---

[1] **See** Pa.R.Crim.P. 721 (Procedures for Commonwealth Challenges to Sentence; Sentencing Appeals).

Felder committed nine gunpoint robberies of West Philadelphia pizzerias from February 2014 through March 2015. The trial court set forth the factual history of the case as follows:

On March 31, 2015, Officers Michael Matos and Sean Devlin drove by Lebel's Pizza at 5601 W. Girard Avenue, while on patrol. When Officer Matos looked inside he saw employees standing with their hands in the air. Both officers approached the restaurant on foot and saw Defendant, Dominick Felder, receiving money from a female employee while the other employees stood with their hands up. When [Felder] left the store, he ignored the officers' commands to stop and had to be detained using control holds. [Felder] possessed a BB gun and $549[.00], and initially gave the police a false name, Jamaal Mickens.

Approximately two hours after being arrested, [Felder] gave a written confession regarding this gunpoint robbery and four previous robberies. He denied committing any other robberies. About sixteen hours later, [Felder] gave another written confession in which he confessed to committing nine gunpoint robberies in total.

[Felder] confessed to the following robberies, in addition to the March 13, 2015 robbery:

1. February 18, 2014: Pete's Pizza, 1913 N. 54th St.; $600-$700 taken from register and manager's pocket[;]

2. June 7, 2014: Pete's Pizza, 1913 N. 54th St.; cell phones and unknown amount of cash taken[;]

3. June 19, 2014: Lebel's Pizza, 5601 W. Girard Ave.; $500 taken[;]

4. November 8, 2014: Robola Pizza, 1999 N. 52nd St.; $500 taken from register and delivery person[;]

5. November 8, 2014: Staci's Pizza, 7404 Drexel Rd.; $150 taken from register[;]

6. November 19, 2014: Lebel's Pizza, 5601 W. Girard Ave.; $800 taken from register[;]

7. November 21, 2014: Yi's Market, 5941 Haverford Ave.; $100 and four cartons of cigarettes taken[; and]

8. December 1, 2014: Lebel's Pizza, 5601 W. Girard Ave.; $600 taken from register[.]

Trial Court Opinion, 9/25/17, at 2 (citations omitted).

On June 2, 2016, Felder entered open guilty pleas[2] to nine counts of robbery (F-1),[3] five counts of possession of an instrument of crime (PIC)[4] (M-1), two counts of carrying a firearm without a license,[5] and one count of carrying a firearm on public streets/property in Philadelphia.[6] Each robbery charge carried a maximum sentence of 20 years' incarceration, 18 Pa.C.S. § 1103(1), and each PIC charge carried a statutory maximum of 5 years' incarceration, 18 Pa.C.S. § 1104(1).

The court ordered a presentence investigation report (PSI) prior to sentencing Felder. The PSI indicated that Felder was arrested eleven times as a juvenile (the first time at age 14) and adjudicated delinquent nine times for conspiracy to commit robbery. PSI, 9/2/16. As a result of his juvenile offenses, Felder was committed to a youth detention center for four years; he

---

[2] In the instant case, Felder was also initially charged with multiple counts of theft by unlawful taking and receiving stolen property. However, those charges were ultimately nolle prossed.

[3] 18 Pa.C.S. § 3701.

[4] 18 Pa.C.S. § 907.

[5] 18 Pa.C.S. § 6106.

[6] 18 Pa.C.S. § 6108.

was discharged from placement in December 2007 and placed on probation until May 2012. As to the current case, Adam Taylor, the investigator who prepared the PSI, made the following recommendation: "Based on [Felder's] juvenile and adult history of committing numerous robberies throughout the jurisdiction, it appears that he is not amenable to County or community supervision. He should make himself available to all programs within the state correctional institutional system." ***Id.*** at 3.

The court sentenced Felder to nine concurrent terms of 11½ to 23 months' incarceration for each robbery count, with immediate parole, and a 10-year probationary term for each robbery count, to run concurrently to each other and consecutive to confinement.[7] No further penalties were imposed for the remaining charges. At sentencing, the prosecutor objected to the court's sentence, asking for reconsideration and claiming that it was too lenient. ***See*** N.T. Sentencing, 6/27/17, at 25 ("Your Honor, I have to respectfully ask Your Honor to reconsider. These are nine gunpoint robberies. A county sentence is wholly inappropriate in this case.").

In rendering his sentence and denying the Commonwealth's request to reconsider the sentence, the trial judge stated:

> All right. Well, I've taken everything into consideration. I think that the alcohol led you to the abuse; the things you did. I take into consideration strong family ties. I think you can be rehabilitated. You're only 24 years old. Some options are here to

---

[7] Felder was also ordered to pay restitution in the amount of $1,644.94.

make you a career criminal, and I can send you away for 20 to 40 years. You'll come back, and you'll be a career criminal.

Or I can take a chance at trying to rehabilitate you. I notice that you never hurt anybody. A true criminal robs, rapes, shoots, pistol whips people, duct tape them. They do all that kind of stuff. You've been in jail three years. Two years -- two years and seven months -- 27 months.

I'm going to take a chance on you. I see some good in you. I think you can be a good person. And that brother-in-law and that sister, I think they're going to keep you straight. I'm going to take a chance on you.

N.T. Sentencing, 6/27/17, at 21-22. The court further explained its reasons for deviating from the guidelines at Felder's sentencing hearing:

I -- I deviated from the guidelines because of strong family background; the fact that nobody was injured. I'll say he had a gun. And I took into consideration the sentencing memorandum I got from the defense. I took into consideration that he didn't hurt anybody; didn't duct tape people. He didn't threaten people. He didn't rape people. He didn't -- and I think the guy has more of a drug issue than anything else. And I took that in – he's not a hardened criminal[.] He's 24 years[-]old. I think this guy can be rehabilitated. I think if we give him the opportunity, I think this guy -- with that strong a family background, I think this guy can be rehabilitated. I could have put him in jail for 20 years. He'd have come out at 44, 50 a hardened criminal[.] Stone cold killer, gunpoint robber. So, I'm taking this opportunity to rehabilitate him[.] And that's why [I] made – that's why I deviated from the guidelines. Ten days to ask me to modify; 30 days to take an appeal. Now, you come back you get a state hit.

*Id.* at 26-27. Later, in its Pa.R.A.P. 1925(a) opinion, the trial court further justified its sentence:

This [c]ourt did, in fact, consider the guidelines in sentencing Defendant. Defendant has a prior record score ("PRS") of five, and Robbery, the lead charge, carries an offense gravity score ("OGS") of ten. Under the deadly weapons used matrix, the guidelines call for a sentence of seventy-eight to ninety months' confinement, plus or minus twelve months for aggravating

circumstances. However this [c]ourt deviated from the guidelines based on Defendant's personal and family history, his acceptance of responsibility and remorse, and his confession and guilty plea. Specifically, this [c]ourt took into account both defense counsel's and the Commonwealth's sentencing memoranda, the pre-sentence investigation report, the gravity of the crimes involved, the effect of the crimes on the community, Defendant's criminal history and familial background, and the deterrent effect of the punishment on other potential criminals. Defendant was **under the influence of alcohol at the time of the latest offense**, and his alcohol abuse and criminal behavior stem from **untreated emotional and physical childhood trauma** caused by his mother and stepfather at a young age. Since Defendant has been incarcerated, he has not been written up, has not gotten into any fights, and has stayed sober. Defendant also has strong ties to a number of family members, especially to his own children, his nieces, his sister and brother-in-law, many of whom took the time and effort to appear in court to support him and speak on his behalf at his sentencing. Defendant has also showed a great deal of remorse for his choices and "immediately accepted responsibility for his actions" at his first meeting with counsel, expressing his desire to stay sober "from this point forward" and showing his potential for rehabilitation. This [c]ourt also took into account the fact that **the weapon used in this case was a BB gun, and that Defendant did not injure anyone** during the commission of the nine robberies. At the time of sentencing, Defendant had been incarcerated for twenty-seven months already, and the sentence of twenty to forty years requested by the Commonwealth would not have given him any chance for rehabilitation and reintegration to become a productive member of society. Because this [c]ourt explained its reasons for deviating from the guidelines, it did not impose an unreasonably lenient sentence.

Trial Court Opinion, 9/25/17, at 4-5 (emphasis added).

The Commonwealth filed a timely notice of appeal and Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising the following issue for our consideration: Did the lower court abuse its discretion where it failed to protect the public from a dangerous felon and offered flawed reasons for its

volume discount and extreme deviation from the sentencing guidelines in imposing a mere eleven and one-half month[s'] to twenty-three months' incarceration for nine gunpoint robberies?  Commonwealth's Brief, at 4.

The Commonwealth's issue implicates the discretionary aspects of the sentence imposed by the trial court.  We note that:

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-66 (Pa. Super. 2014) (citations omitted).

Instantly, the Commonwealth's appeal is timely and its issue was preserved at sentencing.  *See* Pa.R.Crim.P. 721(A)(1) (sentencing issues raised by the Commonwealth at sentencing proceeding shall be deemed preserved for appeal whether or not Commonwealth elects to file motion to modify sentence on issues).  Furthermore, the Commonwealth has included in its brief a Pa.R.A.P. 2119(f) statement of reasons relied for allowance of appeal.  We, therefore, must determine whether the Commonwealth has presented a substantial question invoking our appellate review.  *Buterbaugh*, *supra*.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (internal quotation marks and citations omitted). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Gould*, 912 A.2d 869, 872 (Pa. Super. 2006) (internal quotation marks and citations omitted; emphasis in original).

In its Rule 2119(f) statement, the Commonwealth contends that the trial court's sentence fails to protect the public from a repeat, violent felon, *see Commonwealth v. McCain*, 176 A.3d 236 (Pa. Super. 2017), and the reasons offered by the court for the drastically mitigated sentence are not supported by the record. *Commonwealth v. Dixon*, 496 A.2d 802 (Pa. Super. 1985). Each of these contentions raises a substantial question, thus, invoking our appellate review of the Commonwealths' discretionary aspect of sentence claim.

When reviewing the discretionary aspects of a sentence imposed by a trial court, we are heedful of the following principles. "The imposition of sentence is vested in the discretion of the trial court, and should not be disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that a sentence was manifestly unreasonable." *Commonwealth v. Williams*, 69 A.3d 735, 740 (Pa. Super. 2013) (citation

omitted). "The proper standard of review for an appellate court is to focus on the pertinent statutory provisions in the Sentencing Code, specifically 42 Pa.C.S. §[§] 9781(c) and (d), and 42 Pa.C.S. § 9721(b)." *Id.* at 741 (citation omitted).

Section 9781 provides in pertinent part as follows:

§ 9781. Appellate review of sentence

\* \* \*

**(c) Determination on appeal.**--The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

\* \* \*

(3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.**--In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781 (emphasis added). Section 9721 provides in pertinent part as follow:

§ 9721. Sentencing generally

\* \* \*

(b) General standards.--In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing[.] In every case where the court imposes a sentence . . . outside the guidelines adopted by the Pennsylvania Commission on Sentencing . . ., the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission[.] Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b).

Here, the trial court provided a contemporaneous oral statement[8] regarding its reasons for deviating from the guidelines. Of significance to the court was the fact that Felder had already served 27 months in prison at the time he was being sentenced, so "in effect, he got a state sentence." N.T. Sentencing, 6/27/17, at 25. The court noted that Felder has a strong family support system. The trial judge also believed that the circumstances that led

_____

[8] Although section 9721 states that the court shall provide a contemporaneous *written* statement explaining its deviation from the guidelines, our Court has held that a trial court's on-the-record statement of reasons for deviating from the guidelines, stated in the presence of the defendant, satisfies section 9721's requirement. **See Commonwealth v. Royer**, 476 A.2d 453 (Pa. Super. 1984). **See also Commonwealth v. Rodda**, 723 A.2d 212, 216 (Pa. Super. 1999) (en banc) ("When imposing sentence, a trial court has rendered a proper 'contemporaneous statement' under section 9721(b) of the Sentencing Code, so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.").

to Felder becoming a criminal at a young age were created by the terrible conditions in his home. Finally, the court concluded that Felder's young age and remorse for his actions warranted a significantly mitigated sentence.[9]

In its brief, the Commonwealth cites to **Commonwealth v. McCain**, 176 A.3d 236 (Pa. Super. 2017), to support reversal of Felder's sentence. In **McCain**, the defendant was convicted of aggravated assault, conspiracy and various firearm offenses after he pointed his gun at a victim and then fired the weapon three times at the ground near the victim, causing him to suffer serious injuries. McCain was a repeat felon who had a substantial criminal record. The trial court sentenced McCain to an aggregate sentence of 11½ to 23 months' imprisonment,[10] with immediate parole to house arrest, followed by seven years of reporting probation and 50 hours of community service. In explaining his reason for imposing McCain's sentence, the trial judge noted that McCain had been turning his life around by doing positive things and being a productive member of society. The court also noted that it took into account

---

[9] In its sentencing memorandum, the Commonwealth recommended Felder be sentenced to 20-40 years' incarceration, followed by ten years of reporting probation and restitution. The Commonwealth noted that "the need to protect the community, the gravity of the offenses, and the defendant's prior criminal activity necessitate a sentence of this length." Commonwealth's Sentencing Memorandum, 10/23/16, at 7.

[10] In **McCain**, the court imposed 11½ to 23 months' imprisonment for the aggravated assault charge, an 11½ to 23 month concurrent sentence on the persons not to possess firearms charge, and a two-year consecutive term of reporting probation for the charge of carrying a firearm on a public street in Philadelphia.

the fact that McCain had already been in custody for 18 months and that previously he had successfully been on house arrest while continuing to work.

On appeal, the Commonwealth argued that McCain's sentence was unreasonably lenient and that it failed to protect the public from a violent, unrepentant, career felon. Our Court reversed McCain's sentence and remanded for resentencing finding that McCain had shot his victim, causing him to suffer serious injuries requiring surgery, physical therapy and resulting in long-term pain. Ultimately, our Court concluded that McCain's sentence was unreasonably lenient and an abuse of the trial court's discretion where his significant criminal history included violent crimes, he had been unable to abide by the terms of less restrictive punishments, and the trial court's reasons for deviating from the guidelines "f[e]ll short of justifying a less-than-mitigated sentence." *Id.* at 243.[11] Specifically, our Court noted that the PSI reflected that McCain: (1) had three arrests and one adjudication of delinquency as a juvenile; (2) as an adult, he had 20 arrests resulting in 7 convictions for robbery, rape, simple assault, and a federal firearms offense; and (3) he had incurred 9 parole/probation violations. Finally, our Court

---

[11] We note that at sentencing, the parties misrepresented the appropriate standard-range of the guidelines for Felder as 78-90 months' (they listed Felder's PRS as 5, when in fact it was 4). Thus, with an offense gravity score of 10 and the proper PRS of 4, applying the deadly weapons enhancement/used matrix, the sentencing guidelines called for a standard-range sentence of 66-78 months' incarceration (plus or minus 12 months) on each robbery charge for Felder.

recognized that a standard-range sentence under the guidelines for an RFEL with an OGS of 10, like McCain, was 72-84 months of imprisonment in state prison.

Instantly, we understand the trial judge's reticence to sentence Felder to the lengthy term of imprisonment suggested by the Commonwealth. Felder is a young man and does appear to have a strong family support system. However, in sentencing Felder, the court is also obligated to recognize his extensive criminal activity as a juvenile (having been arrested eleven times and adjudicated delinquent nine times for conspiracy to commit robbery) illustrating his apparent inability to rehabilitate, the need to protect the public from such egregious criminal behavior, and Felder's significant need to rehabilitate.

We acknowledge the well-established precept that when a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence. ***Commonwealth v. Baker***, 72 A.3d 652, 663 (Pa. Super. 2013). However, when the PSI contains information that the court has either inadvertently missed or intentionally ignored, we must comment upon it. In the PSI, the investigator noted that Felder stated: his childhood was "good," he received all of life's necessities (food, clothing and shelter), never witnessed domestic violence, was never exposed to drug abuse, physical or sexual abuse, or ever suffered any emotionally traumatic events as a child. PSI, 9/2/16, at 1. Despite these statements, the trial judge believed that

Felder's "alcohol abuse and criminal behavior *stem from untreated emotional and physical childhood trauma*." Trial Court Opinion, 9/25/17, at 4 (emphasis added). The trial judge also justified its sentence based on the fact that Felder "did not injure anyone during the commission of the nine robberies" and that the weapon used in one of the cases "was a BB gun." Despite these observations, we recognize that Felder pled guilty to robbery under section 3701(a)(1)(ii), which is defined as "in the course of committing a theft, [a defendant] threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)1)(ii). Thus, Felder admitted to having *threatened* his victims with immediate serious bodily injury or having put them in fear of such injury. Moreover, while Felder may have used a BB gun in the commission of one or some of the nine robberies, it does not negate the fact that, as he held the BB gun to his victims, they were not aware that it was anything but a firearm and did not feel any less threatened or in fear for their lives.

With regard to the trial court's recognition that Felder accepted responsibility for his actions and felt remorse, the record reveals that, at the time he was arrested by police on the ninth robbery, Felder resisted arrest, gave an alias, and then did not confess to all nine robberies until sixteen hours later. Moreover, it appears that the only reason that Felder's string of robberies ended was because he was caught red-handed committing the last one.

While the trial court noted that the guidelines called for a standard-range sentence of 78-90 months (plus or minus 12 months) on each of Felder's robbery counts, this was, in fact, an incorrect statement (based on the wrong PRS).[12] *See Commonwealth v. Diamond*, 945 A.2d 252 (Pa. Super. 2008) (sentencing court is required to begin its consideration of sentence from *correct* starting point under sentencing guidelines).  Additionally, while the court stated that it reviewed the PSI, the defense sentencing memorandum, and "took everything into consideration," the court never iterated in its oral contemporaneous statement *at sentencing* that it was aware of the correct guideline range or "consider[ed] any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing."  42 Pa.C.S. § 9721.  Finally, the fact that the trial judge acknowledged in his Rule 1925(a) opinion that he considered Felder's PRS and OGS, *after* the Commonwealth filed its notice of appeal, is too little too late.  *See Commonwealth v. Styles*, 812 A.2d 1277 (Pa. Super. 2002) (court's expression for failing to consider or allude to sentencing guidelines in Rule 1925(a) opinion amounted to inadequate statement of reasons stated for deviation from guidelines under section 9721(b)).

---

[12] Notably, all parties had the incorrect PRS and, therefore, the wrong standard-range sentence under the guidelines.  While the actual PRS used recommended an even higher standard-range sentence than the correct one, the fact remains that trial courts must start from the right point when sentencing a defendant.

Here, with an OGS of 10 and correct PRS of 4, applying the deadly weapons[13] enhancement/used matrix,[14] the sentencing guidelines called for a standard-range sentence of *66-78 months' incarceration* (plus or minus 12 months) on each of Felder's robbery counts. Thus, even a sentence in the mitigated-range of the guidelines on *one* robbery count would still be a four and one-half year minimum sentence. Felder unquestionably has an alcohol problem, one that took root at a very young age. However, even the defense acknowledged that "in state custody [Felder] will have [the] opportunity to participate in programs that will help him address the issues that led to this serious incident." Defendant's Sentencing Memorandum, 10/17/16, at 12. Tellingly, the defense also noted that Felder's actions were so serious that "they warrant[ed] some period of incarceration." *Id.* at 14.

_____

[13] A deadly weapon is defined as any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury. 18 Pa.C.S. § 2301. A BB gun qualifies as a deadly weapon, as defined by section 2301, because it is capable of producing death or serious bodily injury. *Commonwealth v. Ramos*, 920 A.2d 1253 (Pa. Super. 2003).

[14] Once a court has determined that a defendant, during the commission of a crime, possessed a deadly weapon, as defined in section 2301, the court must increase the suggested sentencing ranges by at least twelve to twenty-four months. *Commonwealth v. Bowen*, 612 A.2d 512 (Pa. Super. 1992). The trial court lacks the discretion to refuse to apply the deadly weapon sentencing enhancement. *Id.* The court's discretion comes into play when it is time to impose a sentence, once the court determines the adjusted sentencing guideline range. *Id.*

To sentence Felder to such a lenient sentence is not only an abuse of discretion and unreasonable in light of the facts of this case, but also a disservice to him as a troubled individual who needs the structure and guidance provided by our state correctional institutions. 42 Pa.C.S. § 9781(c)(3). To expect Felder to rehabilitate on his own, even with a familial support system, is ignoring his past behaviors and likelihood of reoffending, all the while depreciating the significance of the offenses and the need to protect the public from such threatening behaviors.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/18