J-S27032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHAUN LORENZO HARVEY | : | |
| | : | |
| Appellant | : | No. 3003 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 11, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005843-2022

BEFORE:  STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED AUGUST 25, 2025**

Appellant, Tyshaun Lorenzo Harvey, appeals from the judgment of sentence imposed on May 28, 2024, following his open plea to third degree murder and firearms not to be carried without a license. After review, we affirm.

The relevant facts and procedural history, as summarized by the trial court, are as follows:

> On May 28, 2024, Appellant entered an open guilty [] plea to murder of the third degree and firearms not to be carried without a license. By entering this plea, he agree[d] that on May 29, 2022, he was in Pottstown, Montgomery County, and while in his vehicle it appeared that he was following Nahmer Baird and Jamar Baird while they were in their vehicle. (N.T., Open Guilty Pica, 5/28/24, p. 13). At one point that evening, Appellant got out of his car and opened fire on their vehicle. **Id.** at 14. By shooting his gun, he hit Nahmer who died of his injuries. **Id**.

_____

[*] Former Justice specially assigned to the Superior Court.

On October 11, 2024, a sentencing hearing was held. Counsel agreed that the deadly weapon enhancement applied. (N.T., Sentencing, 10/11/24, p. 4). The Commonwealth presented evidence in support of the gang enhancement, which this Court ultimately determined applied. Appellant was sentence[d] to the statutory maximum of 20 to 40 years' imprisonment for third degree murder, and a consecutive sentence of three to six years' imprisonment on the firearms not to be carried without a license. *Id.* at 115 - 116.

Appellant filed a timely post-sentence motion, which was denied. A timely notice of appeal was filed. Thereafter, trial counsel requested to withdraw, which was granted. New counsel was appointed for the purpose of this appeal.

Tr. Ct. Op. at 2.

Appellant filed a Rule 1925(b) statement on February 21, 2025. The trial court filed its 1925(a) opinion on March 12, 2025. On June 5, 2025, Appellant filed a motion for leave to file a supplemental brief seeking to include a statement pursuant to Pa.R.A.P. 2119(f). On June 30, 2025, this Court granted Appellant's motion to file a supplemental brief addressing the issue of waiver related to a 2119(f) statement. Accordingly, because Appellant was expressly granted permission by this Court pursuant to Pa.R.A.P. 2501, we accept Appellant's supplemental brief as incorporated into his appellate brief. This appeal follows.

Appellant raises one issue for our review:

Did the lower court err by finding that the gang-enhancement applied when it imposed sentence because the prosecution failed to establish by a preponderance of the evidence that Appellant knowingly killed the victim, Nahmer Baird, in furtherance or at the direction of a gang as required by the statutory language.

Appellant's Br. at 4.

Appellant's claim presents a challenge to the discretionary aspects of his sentence. *See **Commonwealth v. Bowen***, 612 A.2d 512, 514 n.3 (Pa. Super. 1992) (stating that the utilization of a sentencing enhancement concerns the trial court's application of the sentencing guidelines, and therefore implicates the discretionary aspects of a defendant's sentence). Our standard of review of a challenge to the discretionary aspects of sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Robinson***, 931 A.2d 15, 26 (Pa. Super. 2007).

Before reaching the merits of Appellant's discretionary aspects of sentence claim, we must determine whether this Court has jurisdiction in this case.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal[;] (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence[;] (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]

> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citations omitted). An appellant must satisfy all four requirements. ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

Here, Appellant filed a timely appeal on October 31, 2024. Appellant preserved his issue in his post-sentence motion to reconsider sentence filed on October 15, 2024. Next, although the Commonwealth objects to Appellant's failure to include a Rule 2119(f) statement in his initial filing of his brief, Appellee's Br. at 8, Appellant's supplemental brief includes a statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence. Appellant's Supp. Br. at 8. Accordingly, we must find this requirement satisfied. Finally, Appellant raised a substantial question because this Court has held that a substantial question exists when an appellant claims that the court improperly applied a sentencing guideline enhancement. ***Commonwealth v. Christman***, 225 A.2d at 1104, 1107 (Pa. Super. 2019) (citing ***Commonwealth v. Rhoades***, 8 A.3d 912, 915 (Pa. Super. 2010)). Accordingly, we may address the merits of Appellant's claim.

Appellant contends that the trial court abused its discretion in finding that the gang enhancement applied to his case arguing that the Commonwealth did not establish that he "knowingly" committed the homicide at the direction of or for the purpose of benefiting, promoting, or furthering

the interests of a criminal gang. Appellant's Br. at 12. Appellant points to testimony that shows he and the victim had incidents of personal conflict prior to the homicide, and Appellant argues that the prosecution relied on isolated and unrelated incidents to support a speculative theory. *Id.* at 15, 16.

Pursuant to 204 Pa. Code § 303.9(a)(3), "guideline sentence recommendations may include sentence enhancements, which provide increases to the basic sentence recommendations when an enhancement factor identified by the Commission is present." Additionally, "[t]he application of an enhancement is determined by the court at sentencing, based on a preponderance of the evidence that the enhancement factor is present." *Id*. The criminal gang sentencing enhancement is as follows:

(c) Criminal Gang Enhancement, as required by 42 Pa.C.S. § 9720.4.

(1) When the court determines that the offender committed a crime of violence as defined in 42 Pa.C.S. § 9714(g) in association with a criminal gang, the court shall consider the sentence recommendations described in subsection (c)(4).

(2) When the court determines that the offender committed a violation of 35 P.S. § 780-113(a)(30) in association with a criminal gang, the court shall consider the sentence recommendations described in subsection (c)(4).

(3) The Criminal Gang Enhancement shall apply to each violation which meets the criteria above.

(4) The enhancement specifies a range of sentences (i.e., standard range) that shall be considered by the court for each combination of Offense Gravity Score (OGS) and Prior Record Score (PRS). The Criminal Gang Enhancement adds 12 months to the lower limit and adds 12 months to the upper limit of the standard range.

204 Pa. Code § 303.10(c).

Section 9720.4, relating to sentencing for an offense committed in association with a criminal gang sets forth the following:

> (a) Sentencing enhancement.--In addition to any minimum term of imprisonment authorized or established by law for the offense, the Pennsylvania Commission on Sentencing, in accordance with section 2154 (relating to adoption of guidelines for sentencing), shall provide for a sentence enhancement within its guidelines for a crime of violence, as defined in section 9714(g) (relating to sentences for second and subsequent offenses) or a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, if the offense was knowingly committed at the direction of or for the purpose benefiting, promoting or furthering the interests of a criminal gang.

42 Pa.S.C.A. § 9720.4.

The trial court judge who presided over the instant sentencing was also the presiding judge in a prior homicide trial involving the gang of which Appellant was proven to be a member. The victim in the instant case, Nahmer Baird, had testified at the prior trial against members of the gang. Appellant attended that trial, heard the victim testify against his acquaintances, and engaged with other members of the gang in text messages and social media communications regarding the victim's testimony. The trial court reasonably believed that Nahmer's "disloyalty" to the gang by cooperating with law enforcement was the motivation for the shooting. The trial court stated on the record at sentencing:

We heard about the prior BGB[1] homicide trial; I was the pres[iding] Judge; and it is true that Mr. Baird testified there. I credit the testimony of the detectives, that he was clearly testified (sic) and clearly did not want to be here. [Appellant] attend[ed] the trial every day. He saw Mr. Baird testify. He posted on social media messages about the trial and who [was] testifying, including Baird.

He was involved in BGB music videos, which were shown here. He was in many of them. We heard from the expert on gangs that gang members are taught not to cooperate with law enforcement. We learned how BGB promoted itself in many ways, including through these music videos and that BGB gang members were not happy with the conviction of the BGB gang members or the [cooperation] of Mr. Baird at that trial.

Baird was, at one time, a gang member. He broke the code when he cooperated and testified at that trial. [Appellant] was also proven to be a BGB gang member today. We know that gang members act together to further the gang's goals. We learned that if you disrespect the gang, there will be retaliation.

The detective testified about the video posted by [Appellant] focusing on the incarcerated defendant[]s, gang members who [] did not cooperate with the police. We had the expert opinion that [Appellant] killed Mr. Baird in furtherance of the gang, sending a message about not cooperating.

I find that, in fact, the Commonwealth proved beyond a reasonable doubt that this killing was a result of the testifying of Mr. Baird and that [appellant] killed him for those reasons, that he testified.

\*   \*   \*

I find that the [Commonwealth] has proved beyond a reasonable doubt[2] that Mr. Harvey was involved with the gang and that he had attended the homicide trial, along with other BGB

---

[1] BGB stands for "Bud Gang Bitch." N.T., 5/28/24, at 38.
[2] The trial court found that the Commonwealth proved "beyond a reasonable doubt" that Appellant killed the victim because he testified against the gang. The Commonwealth's burden was to prove this fact by a preponderance of the evidence, an even lower burden of proof.

members. He saw Mr. Baird testify and killed [the victim] because Mr. Baird testified for the DA, for the prosecution.

Mr. Baird was clearly terrified when he appeared at trial. He therefore became an enemy of the BGB gang after breaking the rules and testifying. . . . Senseless gun violence can only thrive when people are afraid to come forward and cooperate with police and the prosecution. That's what [Appellant] stood for, that message.

N.T., 10/11/24, at 112-15.

The trial court further explained in its 1925(a) opinion:

Based on the evidence presented this Court properly determined that the Commonwealth established the gang enhancement. As explained in this Court's reasoning, evidence at the sentencing hearing established that Appellant was a part of the BGB, through music videos. Nahmer, Jamar, Lee, Brinkley, and Goins were also BGB members. One of the core ethos of a gang is not to cooperate with law enforcement. This was evidenced through those music videos, where Appellant was promoting BGB loyalty, in the rapping and lyrics in those videos. Appellant's bio on his Instagram was "Loyalty over everything." As testified to by Detective Echevarria, this ethos of loyalty goes to the core of gang mentality.

Nahmer and Jamar had been a part of BGB prior to the Lee, Brinkley, and Goins trial, where Jamar provided testimony against them. Appellant attended that trial and watched Jamar testify. Instagram posts from during that trial and afterwards evidenced Appellant's belief that Jamar violated the core belief of loyalty to the gang when he testified.

Additionally, the gang motive was proved through the timeline of various Instagram posts. During the trial through June of 2022, Appellant posted about his loyalty to BGB, and paying homage to all those convicted and jailed BGB members. On March 28, 2022, there was a post, "Jamar is a rat." About a month prior to the murder, Appellant posted "[Call] em who he said he was

onnat stand."[3] This implied to call Jamar by his government name he used when he testified and not use his nickname. As explained by Detective Echevarria this reflects Appellant's belief that Jamar turned on BGB, and that he shouldn't even be called by his nickname. Nahmer's murder occurred on May 29, 2022. Additionally, even after Nahmer's murder, Appellant continued to pay homage to Lee, Brinkley, and Goins. This evidence supported this Court's reasoning in finding the gang enhancement applied.

Tr. Ct. Op. at 17-18.

We discern no abuse of discretion. The records reflects that the trial court accurately described the officers' testimony at the sentencing hearing, which the court found credible. "[T]he trial court is afforded broad discretion in sentencing criminal defendants 'because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.'" *Commonwealth v. Mouzon*, 812 A.2d 617, 620 (Pa. 2002). The trial court reasonably believed that Appellant, a proven gang member whose social media communications indicate his loyalty to the gang and disdain for the victim who testified against the gang, killed the victim for that reason.

Appellant emphasizes that he was not the person who called the victim a "rat" in the course of communications, but that Appellant was a part of a text thread where *another person* called the victim a rat. Appellant's Br. at 12. Appellant claims that the Commonwealth never proved that *he* uttered those

---

[3] "Onnat" [sic] was Appellant's statement verbatim. It was interpreted as "on that." *See* N.T., 10/11/24, at 21.

words but rather that another gang member did. *Id.* at 17. This fact does not work in Appellant's favor; it tends to show that Appellant acted not necessarily out of his personal beliefs about the victim but based on the "rat" characterization of the victim by the other person, *i.e.*, at the behest of or to further the interests of the gang member who stated such beliefs. Because the court acted within its discretion without prejudice, bias, or ill will when it applied the gang enhancement at sentencing, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025