J-A14016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE PHILLIP EVERAGE, | : | |
| | : | |
| Appellant. | : | No. 442 WDA 2018 |

Appeal from the Judgment of Sentence, February 27, 2018,
in the Court of Common Pleas of Blair County,
Criminal Division at No(s): CP-07-CR-0000348-2017.

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED AUGUST 27, 2019**

Maurice Phillip Everage appeals from the judgment of sentence imposed after a jury convicted him of two counts of aggravated assault, simple assault, two counts of recklessly endangering another person, two counts of terroristic threats, person not to possess a firearm, and carrying a firearm without a license.[1] We affirm.

The trial court summarized the trial testimony and other evidence presented by the Commonwealth as follows:

> On December 9, 2016 at approximately 2:21 AM Altoona City Police patrolmen [Steven] Miksich and [Derek] Swope were dispatched to a report of a pistol whipping assault. They found the victim, Forever Trich, lying on the porch

---

[1] 18 Pa.C.S.A. §§ 2702, 2701, 2705, 2706, 6105, and 6106, respectively.

bleeding from the face. She could barely speak due to her injuries.

[Ms. Trich] testified that she and Trisha Mitchell had been walking to Sheetz to get sandwiches and were proceeding home around 2 AM when they noticed a male across the street on the opposite side staring at them repeatedly. When they looked at him he asked, ". . . what was us bitches staring at?" They said nothing and tried to keep walking, and the man lifted up his shirt to show them he had a gun and said, "what is up?" and crossed the street. When he lifted up his shirt [Ms. Trich] could see the end of his firearm in his pants. She could see the grip of the firearm. The man walked up close behind them. They turned around. The man got in [Ms.] Mitchell's face. She was trying to call the police and he told her to put the phone down. He swatted the phone out of her hand. [Ms. Trich] told him to leave her the F alone.

[Ms. Trich] was on the phone at the time and the man came over to her and ripped the phone out of her hand and threw it across the street. He then pulled out his gun and put it to her forehead. He said, "Who do you bitches think you are talkin' to – talking like that gets bitches capped out here." And he said he was from Philly and he was going to show them what was up. Ms. Mitchell put her hand on his shoulder and said please don't do this we had a really bad day already, we have two kids at home. [The man] acted like he was walking away, and turned around and backhanded [Ms. Trich] with the gun. Her testimony was that she blacked out. He walked away.

[Ms. Trich] identified the gun as a semi-automatic weapon. She picked out [Everage] from a photo lineup as her attacker. The photo lineup consisted of eight individuals who looked similar to each other. It was entered into evidence as Commonwealth Exhibit number two. [Ms. Trich] immediately identified [Everage] from Exhibit number two as soon as she saw it. She also identified [Everage] in the courtroom as her attacker.

Dr. Matthew Bouchard was called as an expert witness in the field of emergency trauma medicine. He testified that [Ms. Trich] sustained a laceration or cut that went completely through her lip, and had a small laceration to her

gum, as well as swelling and bruising. She had cuts on her cheek area with significant bruising and swelling. He testified that these injuries would cause pain. He indicated that these injuries would cause difficulty in speaking. He testified that a blow with a firearm to that area of the face could result in serious bodily injury. It was his opinion to a reasonable degree of medical certainty that bodily injury was caused to [Ms. Trich], and that it as possible or likely for serious bodily injury to be caused to [Ms. Trich] if she was struck in the face with a firearm.

Trial Court Opinion, 6/6/18, at 5-7 (citations omitted).

Prior to trial, the trial court determined that Everage wished to proceed *pro se*, and he acted in this capacity during jury selection. Despite the recommendation of the Commonwealth, Everage also declined to sever the firearm violations from the other charges. In addition to the above summary, we note that the Commonwealth introduced photos of Ms. Trich's injuries, and that the parties stipulated that Everage had two prior felony convictions, which would have precluded him from having the ability to obtain or possess a firearm.

Following his convictions, the trial court sentenced Everage to an aggregate term of 10½ to 21 years of imprisonment. Everage did not file a post-sentence motion. This timely, counseled appeal followed. Both Everage and the trial court have complied with Pa.R.A.P. 1925.

Everage raises the following issues:

i. The evidence was insufficient to support the verdicts for aggravated assault attempt to cause serious bodily injury; aggravated assault cause bodily injury; simple assault recklessly endangering another person (two counts); terroristic threats (two counts); [person] not

- 3 -

to possess a firearm; carrying a firearm without a license for the following reasons:

    a. The evidence was insufficient to prove [Everage] was present at the incident.

    b. The evidence was insufficient to prove a firearm was used in the incident.

ii.    The evidence was against the weight of the verdict as the evidence presented does not sustain the verdicts of guilty for aggravated assault attempt to cause serious bodily injury; aggravated assault cause bodily injury; simple assault; recklessly endangering another person (two counts); terroristic threats (two counts); [person] not to possess a firearm; carrying a firearm without a license as the evidence does not prove beyond a reasonable doubt:

    a. [Everage] was present at the scene.

    b. A firearm was used in the incident.

    c. There was an attempt to commit serious bodily injury.

iii.    [Everage] is entitled to a new trial where in its opening, the Commonwealth specifically stated the prior felonies [he] was convicted of, including aggravated assault, the specific charge faced in this matter. This resulted in unnecessary prejudice towards [Everage] and was prosecutorial misconduct.

iv.    [Everage] is entitled to a new trial as the Commonwealth used Detective [Terry] Merritts to bolster the testimony of Ms. Trich and Ms. Mitchell. [Detective] Merritts was seated at the counsel table throughout the trial and was called following the testimony of both women to support their testimony and explain the discrepancies in each of their testimony. This testimony was more prejudicial than probative.

v.    [Everage] is entitled to a new trial as the expert testimony of Dr. Bouchard was duplicative and was not necessary as the opinion to which he testified was

> not about a complex matter or an issue beyond common knowledge.
>
> vi.     [Everage] is entitled to a new trial as the photographs of [Ms. Trich's] injuries were shown to the jury as Exhibit 2 were too prejudicial.

Everage's Brief at 10-11 (excess capitalization omitted).[2]

In his first issue, Everage challenges the sufficiency of the evidence supporting his convictions. Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[2] In his brief, Everage raised three additional issues. **See** Everage's Brief at 11. Everage states that he is no longer pursuing his claim of prosecutorial misconduct during the Commonwealth's closing. **See id.** at 36. As to his final two issues, involving Ms. Mitchell's *crimen falsi* convictions and trial counsel's alleged ineffectiveness, Everage acknowledges that the claims must await collateral review. **See id.** at 45-46. Accordingly, we have renumbered his issues.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard or review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

In support of this claim, Everage does not cite or argue any specific element of any of the crimes for which the jury convicted him. Instead, he asserts that the evidence did not sufficiency establish him as the perpetrator and that the evidence did not establish that the perpetrator used a firearm to strike Ms. Trich.[3]

The trial court found no merit to Everage's claim regarding his identity as the perpetrator:

> [Everage] makes a general complaint that the evidence was insufficient to prove that he was present at the incident. However the testimony was that [Ms. Trich] picked him out of a photographic lineup, and she identified him in person in court. This is sufficient evidence [Everage] was present at the incident.

Trial Court Opinion, 6/6/18, at 11-12. Our review of the record supports the trial court's conclusions. Indeed, Ms. Trich not only testified that Everage was present when the incident occurred, but also specifically identified him in court as her attacker. N.T., 9 /11/17, at 95. In addition, we note that Ms. Trich

---

[3] Everage makes no additional argument in support of this claim that the Commonwealth failed to identify him as the perpetrator of the assault. Instead, he focuses entirely on the firearm convictions. *See* Everage's Brief at 18-19. Everage also misidentifies Ms. Mitchell as suffering the injuries inflicted by his assault. *Id.* at 19.

and Ms. Mitchell both testified that Everage struck Ms. Trich in the face with a gun. Thus, Everage's sufficiency challenge fails.

In his second issue, Everage asserts that "[t]he evidence was against the weight of the verdict as the evidence presented does not sustain the verdicts of guilty[.]" Everage's Brief at 10. In making this assertion, Everage conflates a challenge to the sufficiency of the evidence with a claim challenging the weight of the evidence. "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (citations and footnote omitted).

In his summary of argument, Everage contends:

> The verdict was such that it shocked the conscience and should be overturned. The evidence which was presented to the Jury was so prejudicial and unfair, [Everage] did not receive a fair trial. As the verdict was based on all of the evidence presented to the Jury, the verdict is against the weight of the admissible evidence.

Everage's Brief at 16. To the extent Everage raises a true weight claim, the claim is waived because he failed raise it in a post-sentence motion or otherwise before the trial court. Pa.R.Crim.P. 607; **see also Commonwealth v. Kennedy**, 151 A.2d 1117, 1129 (Pa. Super. 2016) (reiterating that a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing). "Failure to properly preserve the claim will result in waiver even if the trial

court addresses the issue in its opinion." ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012).[4]  Thus, Everage's second issue fails.

In his third issue, Everage asserts, "the trial court erred in allowing inadmissible and prejudicial evidence to be presented to the Jury in the [form of] allowing the Commonwealth to introduce [his] prior criminal conviction [during the prosecutor's opening statement] of Aggravated Assault to the Jury without further instructions [to] the Jury[.]"  Everage's Brief at 16-17.

Everage's claim involves an allegation of prosecutorial misconduct.  Our standard of review is well settled:

> [P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. . . . In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion.  When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark . . . constitutes reversible error.

---

[4] Everage raised the weight claim for the first time in his Rule 1925(b) statement.  The trial court found that he "[did] not allege specific facts in support of this claim."  Trial Court Opinion, 6/6/18, at 12.  Nevertheless, the trial court stated, "The totality of the evidence at trial resulted in verdicts that were not against the weight of the evidence, were not contrary to the evidence, and did not shock the conscience."  ***Id.***  Upon review, we conclude that the trial court did not abuse its discretion when it denied Everage's weight claim.  ***See Commonwealth v. Ross***, 856 A.2d 93, 99 (Pa. Super. 2004) (citing ***Commonwealth v. Widmer***, ***supra***) (explaining "appellate review of a weight of the evidence claim normally involves examining the trial court's exercise of discretion in its review of the fact-finder's determinations").

*Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citations

omitted). "Prosecutorial misconduct, however, will not be found where the

comments were based on evidence or proper inferences therefrom or were

only oratorical flair." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.

Super. 2005) (citation omitted). In order to evaluate whether comments were

improper, we must look to the context in which they were made. *Id.*

According to Everage, the Commonwealth committed prosecutorial

misconduct during its opening statements to the jury. As our Supreme Court

has summarized:

> The principles applicable to such a claim are well
> established. Remarks in a prosecutor's opening statement
> must be fair deductions from the evidence which he in good
> faith plans to introduce and not mere assertions designed to
> inflame the passions of the jury. The prosecution is not,
> however, required to prove conclusively all statements
> made during the opening [statement]. As long as there is
> a good faith and reasonable basis to believe that a certain
> fact will be established, reference may properly be made to
> it during the opening [statement]. Even if an opening
> [statement] is improper, relief will be granted only where
> the unavoidable effect is to so prejudice the finders of fact
> as to render them incapable of objective judgment.

*Commonwealth v. Jones*, 610 A.2d 931, 938-39 (Pa. 1992) (citations

omitted).

Here, the trial court explained the context in which the prosecutor

referred to Everage's prior aggravated assault conviction during his opening

statement to the jury:

> [Everage's] next claim is that he is entitled to a new trial,
> stating that in its opening, the Commonwealth specifically

- 9 -

stated the prior felonies he was convicted of including aggravated assault, the specific charge faced in this matter. He claims that this resulted in unnecessary prejudice towards him and was prosecutorial misconduct.

In the preliminary stages of this case, [Everage] was a self-represented litigant. On the first day of jury trial, he requested that his standby counsel take over and represent him as counsel in chief. The court did a colloquy on this point[.]

When the trial began, [Everage] had not come to any stipulation with the Commonwealth about how his prior criminal record as a person prohibited from possessing a firearm would be presented to the jury. That criminal record would be a necessary element of the Commonwealth's case in regards to the [firearm violations].

In his opening statement, the prosecutor said, "And you will hear in this case, [Everage] has a criminal history that prevents him from the possession of a firearm," and "In this case, the Commonwealth alleges that [Everage] has an adjudication as a juvenile for aggravated assault and a conviction as an adult for possession with intent to deliver a controlled substance." At that point, defense counsel objected. He stated, "I am objecting to the listing of the prior record. I offered a stipulation that [Everage] was a person who would not be eligible to possess a firearm. That stipulation was declined. What - - bringing out the prior record is too prejudicial to what [the prosecutor] needs to prove for his case."

The Commonwealth responded that [Everage] had every opportunity before trial to sever the two firearm charges from the remainder of the charges levied against him. [Everage] had declined to sever the charges. The [prosecutor] noted that he did not get into [Everage's] entire criminal record, but only listed the two convictions that he intended to present to the jury in the case as elements of the firearms crimes, through the witness Detective [Norman] Young.

The Commonwealth asserted that it had a case that stood for the proposition that the Commonwealth does not have to accept the stipulation as to the criminal record, and that the court can allow that evidence and give an instruction to

the jury that they may only view that evidence for the limited purpose of whether the person can or cannot possess a firearm.

Trial Court Opinion, 6/6/18, at 12-14 (citations to record omitted).

The trial court then explained why it overruled defense counsel's objection, and noted that cautionary instructions were given:

> The court overruled the objection for the reason that the opening statement was not an evidentiary phase of the trial, (the court had just given an opening instruction in which it told the jury that the statements of the attorneys were not evidence) and further, the court believed that the Commonwealth does have a right to advance proof of the elements of the charges of possession of firearm prohibited to explain to the jury why [Everage] is prohibited from possessing a firearm. The court further asked the Commonwealth to explain that the only purpose for which the jury would be allowed to consider those convictions would be for [Everage's] legal authority or ability to possess a firearm, and that they could not consider them for any other reason. The Commonwealth did so[.]
>
> Further in its closing instructions, the court instructed the jury that they could not consider the convictions of the two felony offenses for any other purpose other than whether a prohibition existed barring [Everage] from possessing a firearm or having a license to have a firearm. The court specifically stated that that the jury must not regard this evidence as showing that [Everage] is a person of bad character or criminal tendencies from which they might be inclined to infer guilt. Because both the [prosecutor] and the court told the jury that they could not consider any prior offenses for any other reason besides whether [Everage] was a person permitted to possess a firearm, in essence not just one but two curative instructions were given on this point. On a totality of the presentation about this point at trial, and given the sufficiency and weight of the evidence, if there was any error, it was harmless error.

Trial Court Opinion, 6/6/18, at 14-16 (citations to record omitted).

- 11 -

Our review of the record supports the trial court's recollection of the trial and its conclusion that no prosecutorial misconduct occurred. In making his arguments to the contrary, Everage neither acknowledges the prosecutor's compliance with the trial court's directive nor the trial court's cautionary instructions to the jury. It is well settled, that juries are presumed to follow the instructions of the trial court. *See Commonwealth v. Faurelus*, 147 A.3d 905, 915 (Pa. Super. 2016). Moreover, it is clear that the prosecutor acted in good faith in making the comments because Everage declined to sever the firearm charges prior to trial, and the Commonwealth had to prove the elements of the firearm violations. Although Everage now argues that the prosecutor did not need to mention the specific crimes that made him ineligible to possess a firearm, the Commonwealth cannot be faulted for comments made based on Everage's *pro se* decision not to sever the firearm charges. Thus, his third claim fails.

In his fourth claim, Everage asserts that he is entitled to a new trial because the Commonwealth used the testimony of Detective Terry Merritts to bolster the trial testimony of Ms. Trich and Ms. Mitchell. Everage raised his objection following the Commonwealth's offer of proof prior to the detective testifying:

> [BY THE PROSECUTOR:]
>
> [Detective Merritts] will talk about investigating this [incident] in I think 12-12-2016 - - interviewing Ms. Trich and Ms. Mitchell several weeks after the incident occurred. Ms. Trich providing nicknames Aleem and Leem, and an account based on the account and nicknames he had a

suspect and he had a photo lineup with that suspect in mind. I will ask him how he prepares the photo lineup and selects people with the similar height, weight, build, hair color and things like that. I will show him the lineup. I will ask him if Ms. Mitchell identified the suspect, if [Ms.] Trich identified the suspect. I will ask if there was any confusion by [Ms. Trich] before the Preliminary Hearing. Did her confusion at the Preliminary Hearing ever make sense until her testimony today. Did she indicate to him or anybody else that if someone had spoke to her about [Everage] having a brother at the Preliminary Hearing. We (inaudible) that until today. And I believe that is essentially it.

[DEFENSE COUNSEL]: I would think that I have an objection to the Detectives [sic] somehow bolstering the credibility of their witness. That is the jury's function to determine credibility not the Detectives [sic].

[THE PROSECUTOR]: Which way in particular?

[THE COURT]: Well when you recited her testimony did not make sense until today like that.

[THE PROSECUTOR]: I would just ask if he was aware prior today that someone had approached [Ms. Trich].

[DEFENSE COUNSEL]: Why is that not hearsay?

[THE PROSECUTOR]: Because it is not for the truth of the matter asserted that is why the Detective was aware.

[DEFENSE COUNSEL]: It is for the truth of the matter asserted. You are just trying to get around that.

[THE PROSECUTOR]: I don't know if I agree with that. I think it is relevant to ask him that. I think only my first question is really the important one. The rest I could probably do in argument just as there was every any hesitation or confusion by [Ms. Trich].

[DEFENSE COUNSEL]: Even hesitation and confusion that is to bolster her identification.

[THE PROSECUTOR]: I don't agree with that. There was a lot of discussion about the Preliminary Hearing transcript about whether [Ms. Trich] was wavering in her

- 13 -

identification, and then I tried on redirect once I figured out or believed that I figured out what her confusion was about to rehabilitate her. I think it is probative for this jury to learn whether there was any indication by her to [Detective Merritts] that she was concerned before the Preliminary Hearing because she testified I don't have to bring it up to this Detective that someone essentially told her that there was another person that looked like this person and his name was Aleem prior to her testimony at the Preliminary Hearing.

[THE COURT]: I just don't want to have a whole trial about what didn't somebody did or didn't say to her or what she did or didn't say to somebody else at the time. I mean that is really going down a rabbit hole. That is my only concern. That is just a general observation. You are free to object to single questions. I don't think I can block a whole line of questioning by saying that.

[THE PROSECUTOR]: We will try to take it a different route too. I don't think any - - I mean I think we will all have our arguments that we can make based on [Ms. Trich's] testimony alone, and depending on how cross examination goes it might open up the door for different things too.

[DEFENSE COUNSEL]: Okay, thank you, Your Honor.

N,T., Trial, 9/11/17, at 142-44.

The trial court summarized Detective Merritts' ten-pages of testimony as follows:

[Detective Merritts] described his duties as a detective and stated that he was assigned to the assault of [Ms. Trich] that occurred on December 9, 2016. He described interviewing [Ms. Trich and Ms. Mitchell] and talked about their identification of [Everage]. He asked them whether they would be willing to look at a photo lineup. He described to the jury how he compiled the lineup. He identified the photo lineup he used in the case[.] He described how he conducted the photo lineup with [Ms. Trich and Ms. Mitchell]. He testified that [Ms. Trich] identified [Everage]

- 14 -

as the person who assaulted her. He described her physical reaction at seeing the photograph. This is the extent of his testimony on direct examination in the Commonwealth's case in chief.

Trial Court Opinion, 6/6/17, at 16-17.[5]  The trial court then concluded that Everage had failed to adequately develop his claim:

> The trial court respectfully submits that this complaint is too vague for the court to be able to adequately address. There is not a specific allegation of how this testimony is more prejudicial than probative. [Everage] does not point to specific testimony that he alleges to be more prejudicial than probative. He does not allege, beyond a bald assertion, how the detective's testimony was used to bolster [Ms. Trich's] testimony. He does not point to any specific testimony that he says was used to improperly bolster the testimony of Ms. Trich and Ms. Mitchell]. The trial court cannot provide any aid to the Superior Court on this issue because of vagueness.

*Id.* at 17.

We are aware that "improper commentary on a witness' credibility may be achieved through means other than the prosecutor's own statements, such as eliciting improper comments from a Commonwealth witness." *Commonwealth v. Tedford*, 960 A.2d 1, 32 (Pa. 2008).  Nevertheless, we agree with the trial court that Everage has not adequately developed this claim.  *See Commonwealth v. Tielsch*, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).

---

[5] We note that Ms. Mitchell never identified Everage as Ms. Trich's attacker.

Notwithstanding the vagueness of Everage's claim, we note that the Commonwealth called Detective Merritts to reinforce its position that Ms. Trich readily identified Everage as her attacker when she saw the photo lineup, and that she only wavered in her identification of him at the preliminary hearing under cross-examination by defense counsel. The Commonwealth wished to emphasize Trich's trial testimony that, prior to the preliminary hearing, a third party had told her that Everage had a twin brother who went by the nickname "Aleem." **See** N.T, 9/11/17, at 104. Defense counsel appeared to be satisfied with the Commonwealth's offer of proof, and counsel did make a hearsay objection at one time during the direct examination of Detective Merritts' testimony. **See** N.T., Trial, 9/11/17, at 149. Defense counsel then engaged in a cross-examination of the detective in which he sought to challenge Ms. Trich's identification of Everage as her attacker, and whether Everage told the women he was from Philadelphia. **See id.** at 155-65.[6] Given these circumstances, and the lack of specificity in Everage's supporting argument, we conclude his fourth issue affords him no relief.

In his fifth issue, Everage asserts that he is entitled to a new trial because Dr. Matthew Bouchard's expert testimony "was duplicative and was

_____

[6] Defense counsel objected three more times during the prosecutor's re-direct examination, but to matters not at issue in this appeal. **See id**. In a fourth objection, defense counsel objected to the Commonwealth's asking Detective Merritts for his conclusion whether Ms. Fritch's became confused when she was informed of Everage's real name. **Id.** at 173. Detective Merritts did not answer the question and the court instructed the jury that they would have "to draw your own conclusions about each witness's testimony[.]" **Id.**

not necessary as the opinion to which he testified was not about a complex matter or an issue beyond common knowledge." Everage's Brief at 37 (excess capitalization omitted). According to Everage:

> The testimony of the expert, Dr. [Bouchard] was not an issue which was outside the realm of common knowledge and was inadmissible. The doctor simply restated the testimony Ms. Trich had given regarding her injuries, he just used more technical terms than her. He did not help the jury's understanding of the circumstances [any more] than Ms. Trich or the photographs did and his testimony should have been inadmissible.

Everage's Brief at 37-38.

Admission of expert testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion. *Commonwealth v. Szakal*, 50 A.3d 210, 227 (Pa. Super. 2012) (citation omitted). Expert testimony is admissible only when the subject matter of the testimony is beyond the knowledge or experience of the average layperson. "When the issue is one of common knowledge, expert testimony is inadmissible." *Commonwealth v. Dunkle*, 602 A.2d 830, 836 (Pa. 1992) (citing *Commonwealth v. O'Searo*, 352 A.2d 30 (Pa. 1976)).

The trial court found no merit to Everage's claim:

> Dr. Bouchard has a bachelor's degree and an M.D. degree. He was determined to be an expert in the field of emergency medicine. He rendered an opinion that was within a reasonable degree of medical certainty about the injuries [Ms.] Trich suffered in this case. His testimony was necessary to establish the elements of aggravated assault. It was beyond the knowledge of a layperson that, as Dr. Bouchard described, not only could you break bones around your face or your nose if you are struck with a handgun,

there could also be nerve damage, and there could be damage to your teeth, and all of those things could potentially cause permanent injury. [Everage's] claim here borders on the frivolous.

Trial Court Opinion, 6/6/18, at 18-19 (citations to record omitted).

Initially, we note that this claim is not properly before us because defense counsel did not object to Dr. Bourchard's testimony. The failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue. *Commonwealth v. Tucker*, 143 A.3d 955 (Pa. Super. 2016); Pa.R.A.P. 302(a).[7]

Notwithstanding waiver, we agree with the trial court that Everage's claim is meritless. Everage correctly notes "[w]hen the issue is one of common knowledge, expert testimony is inadmissible." Everage's Brief at 39 (quoting *Commonwealth v. Dunkle*, 602 A.2d 830, 836 (Pa. 1992)). However, his reliance upon *Dunkle* to support his claim that reversible error occurred in his case is misplaced.

In *Dunkle*, our Supreme Court held that "it was error to permit an expert to explain why sexually abused children may not recall certain details of the assault, why they may not give complete details, and why they may

---

[7] Prior to trial, defense counsel objected to Dr. Bouchard's testimony insofar as it was indicated he would state Everage struck Ms. Trich. The Commonwealth agreed, and noting that the expert was not a fact witness. *See* N.T., 9/11/17, at 24-25. This objection was not sufficient to preserve Everage's present claim.

delay reporting the incident." ***Dunkle***, 602 A.2d at 831. According to the Court, "[a]ll of these reasons are easily understood by lay people and do not require expert analysis." ***Id.*** at 836.[8] Here, by contrast, the Commonwealth properly used Dr. Bouchard's testimony to prove Everage's ability to cause serious bodily injury. We discern no abuse of discretion by the trial court in admitting this evidence. Thus, because Everage's claim is waived and otherwise without merit, his fifth issue warrants no relief.

In his sixth and final issue, Everage asserts that the trial court erred in allowing the Commonwealth to show photographs of Ms. Trich's injuries to the jury.

The decision to admit photographs, like other items of evidence, "is solely within the province of the trial court, and a decision [thereon] will not be disturbed absent a showing of an abuse of discretion." ***Commonwealth v. Murray***, 83 A.3d 137, 155-56 (Pa. 2013). When the Commonwealth proffers photographic evidence of an alleged victim of crime, the trial court must engage in a two-part analysis in order to determine whether such evidence is admissible:

> First, a trial court must determine whether the photograph
> is inflammatory. If not, it may be admitted if it has
> relevance and can assist the jury's understanding of the
> facts. If the photograph is inflammatory, the trial court must
> decide whether or not the photographs are of such essential

---

[8] We note that the ***Dunkle*** decision has been superseded by statute. ***See generally***, 42 Pa.C.S.A. § 5920 (providing rules for use of expert testimony in criminal proceedings for sexual offenses).

evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jury.

*Commonwealth v. Murray*, 83 A.3d 137, 156 (Pa. 2013) (citations omitted).

Prior to trial, defense counsel objected to the Commonwealth's use of the photos because "it is prejudicial and shows all the blood." N.T., 9/11/17, at 21. Defense counsel further argued that it was "not necessary to show that to the jury except to inflame their passions." *Id.* According to defense counsel, the photographs "could have been done in black and white and it could have been done without all of the graphic detail." *Id.* In response, the Commonwealth stated that pictures were relevant "to prove under the current charges that exist - - one, that there was bodily injury with a deadly weapon and two, that there was an attempt to cause serious bodily injury[.]" *Id.* The Commonwealth further proffered that the close-up photo demonstrated Ms. Trich "was struck with a heavy object consistent with the pistol that did leave a mark on the side of her face." N.T., 9/11/17, at 23.

The pictures at issue were part of a compact disc that the Commonwealth admitted at trial as Commonwealth's Exhibit #2. There were four photos appearing on slides for the purpose of their use at trial. The trial court first discussed what the pictures depicted and then stated why they were admissible:

> Okay, the [Commonwealth has] proffered two photographs in Slide form. The first depicts [Ms. Trich] lying in a hospital bed with certain medical hardware about her mouth and some amount of blood in the location of the

medical hardware and apparent stitches. The Court finds the photograph not to be excessively bloody or gruesome or unduly [prejudicial] in the manner that would force the Court to exclude it. The Court does believe that the slide would increase the jury's understanding of the elements the Commonwealth has to prove in the case. The second Slide proffered by the Commonwealth is a close-up of a mark on [Ms. Trich's] skin with one drop of blood and some reddish markings. The Court also specifically rules that that is not unduly prejudicial so as to need to be excluded from the jury's view. So that is the ruling on the two photographs.

N.T., 9/11/17, at 23-24.

After the Commonwealth informed the trial court that there were actually four photographs, the trial court ruled "they are not prejudicial and would advance the jury's understanding of the Commonwealth's allegations of the element that it has to prove." *Id.* at 24. In its Rule 1925(a) opinion, the trial court reiterated that, although pictures showed Ms. Trich's face with bruising and some blood, the "Commonwealth needed to establish her injuries as elements of the crimes charged. The court found the photographs to be probative rather an unduly prejudicial." Trial Court Opinion, 6/6/18, at 19.

Having reviewed the pictures at issue, we conclude that the trial court did not abuse its discretion in permitting the jury to see them. The pictures depict the injuries Ms. Trich sustained and, although blood is observable, they are not gruesome or graphic. *See Commonwealth v. Hatcher*, 746 A.2d 1142, 1144 (concluding, in a prosecution for aggravated assault based on the handgun beating of the victim, the trial court did not abuse its discretion in admitting five photographs of the victim; "[w]hile we find these photographs

somewhat graphic, we also believe they were relevant in determining the seriousness of the wounds"). Thus, Everage's sixth issue fails.

In sum, because all of Everage's claims on appeal are meritless, we affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/27/2019