612 A.2d 512

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Frank A. BOWEN.**

Superior Court of Pennsylvania.

Argued Jan. 22, 1992.

Filed July 20, 1992.

Harriet R. Brumberg, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Lee Mandell, Philadelphia (submitted), for appellee.

Before McEWEN, BECK and KELLY, JJ.

BECK, Judge.

The Commonwealth appeals the judgment of sentence imposed after appellee was found guilty of three counts of robbery, conspiracy and possessing an instrument of crime. The Commonwealth claims that the sentencing court erred in failing to apply the deadly weapon enhancement provision of the sentencing guidelines when it imposed sentence on appellee.[1] For the reasons which follow, we vacate the sentence and remand for resentencing.

The conviction at issue arose as a result of a hold-up which took place on January 6, 1990 outside a Denny's Restaurant on City Line Avenue in Philadelphia. Appellee Frank Bowen and five other cohorts followed the three victims out of the restaurant. As the victims, Kevin Whitehead, Gary Taggert and Terrance Taggert, approached their car, the assailants pulled weapons and commenced the assault by announcing, "This is a stick-up." Victim Kevin managed to jump in the passenger side of their two door vehicle and victim Terrance climbed in the driver's side. Meanwhile, the robbers took victim Gary's watch and coat from him and Gary ran back into the restaurant. The assailants then dragged Terrance out of the car, held him at gunpoint, beat him up and took his money from his pocket.

Kevin at some point got into the back seat of the car and was seated there when three assailants, including appellee Bowen, climbed into the car and demanded Kevin's leather jacket. Two of the robbers were in the front seat and another was beside Kevin in the back seat. Kevin identified appellee as the person who was seated in the passenger front seat and to whom he eventually gave his jacket. At

---

1. 204 Pa.Code § 303.4, *reprinted following* 42 Pa.C.S.A. § 9721.

first, Kevin refused to hand over his jacket. He indicated he changed his mind after he heard a shot coming from outside and behind the vehicle and one of the attackers in the car hit him in the face. As a result of this coercion, Kevin handed over his jacket to appellee.

Kevin repeatedly testified that when he and his friends first were approached by the attackers and informed of the "stick-up", each of the assailants had a gun. The weapons were handguns except for one shotgun which Kevin saw being pulled out of the trunk of a nearby car. When appellee was in the front seat of the car, threatening Kevin and demanding his leather jacket, Kevin did not see a gun in appellee's hand. However, Kevin unequivocally stated that at least two weapons were visible in the car at the time appellee took his jacket. His testimony was that both the assailant in the driver's seat and the man in the back seat next to him were holding weapons. Given the testimony at trial, it is beyond dispute that the armed men in the car and appellee Bowen were acting in concert and that Bowen, even if not presently or overtly displaying a weapon while in the car, was inches from his armed partners in crime.

The testimony of one of the other victims, Terrance Taggert, was less specific with respect to the number of weapons wielded by the robbers. Terrance remembered seeing two guns and a shotgun in use during the robbery, but could not identify which assailant had possession of the guns.

At the close of trial, the court as trier of fact found appellee guilty of theft, assault, recklessly endangering another person, possession of an instrument of crime, conspiracy, and robbery.[2] The court found appellee not guilty of violating the uniform firearms act. When the court announced its verdict, it explained to defense counsel that "the basis ... for the assault, theft, and recklessly endangering another person and robbery, all would be on the

---

2. Theft, assault, and recklessly endangering another person merged for sentencing purposes.

basis of conspiracy." It did not likewise so indicate for the possession of instrument of crime.

When it announced its verdict, the trial court stated that it found appellee "guilty on all three [counts] ... [of] robbery as a felony of the first degree". At sentencing, however, the court indicated that its verdict was for robbery as a second degree felony. The robbery statute provides that second degree robbery occurs if, during the course of a theft, a person "inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S. § 3701(a)(1)(iv). First degree robbery is committed if, inter alia, during the course of a theft, a person "threatens another with or intentionally puts him in fear of immediate serious bodily injury". 18 Pa.C.S. § 3701(a)(1)(ii). We note that the robbery here was found to be committed at gunpoint and as such would seem squarely to fall within the definition of section 3701(a)(1)(ii) as a first degree felony. However, for sentencing purposes, a finding of first degree robbery would have exposed appellee to the enhancement provisions of the Mandatory Sentencing Act, 42 Pa.C.S. § 9712, which imposes a mandatory minimum sentence for visible possession of a firearm during the commission of a first degree robbery. *See Commonwealth v. Matos,* 382 Pa.Super. 401, 555 A.2d 901 (1989), *appeal denied,* 525 Pa. 597, 575 A.2d 563 (1990) (defendant properly sentenced under mandatory sentencing act where record clearly demonstrated defendant's knowledge of his co-felon's visible possession of firearm during robbery). The record does not make clear at what point the court decided that the robbery conviction was for a second degree robbery only. Clearly, however, by the time the sentencing hearing commenced on April 24, 1991, the court had determined its sentencing scheme which was based on the assumption that appellee's sentence would not reflect the use of the firearms during the commission of the offense.

A sentencing hearing was held on April 24, 1991, at which the trial court imposed the following sentence. For second

degree robbery the court sentenced appellee to two concurrent terms of imprisonment of five months to eighteen months; a concurrent term of probation of thirty-six months on the third count of robbery and conspiracy; and a concurrent term of twenty-four months probation for possessing an instrument of crime. The Commonwealth filed a petition to reconsider sentence, arguing that the trial court erred in failing to apply the deadly weapon enhancement of the sentencing guidelines. The petition was denied and this appeal by the Commonwealth followed.[3]

The sentencing guidelines provide in part that:

§ 303.4 Deadly weapon enhancement

(a) When the court determines that the defendant possessed a deadly weapon, as defined in 18 Pa.C.S. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence range which would otherwise have been applicable.

204 Pa.Code § 303.4.

It cannot be disputed that, where applicable, the deadly weapon enhancement provision requires that the trial court add the specified time to the guideline sentence range in order to determine the proper range of sentencing. As this court has stressed:

The trial court has no discretion as to whether it will apply § 303.4 and add at least twelve months and up to twenty-four months confinement to the guideline sentence range when the defendant possesses a deadly weap-

---

3. As a preliminary matter, we note that the Commonwealth has complied with the requirements of *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), and Pa.R.A.P. 2119(f), by including in its brief a separate and concise statement of the reasons for allowance of appeal. This court will permit appeal from the discretionary aspects of a sentence where it appears that there is a substantial question that the sentence imposed is not appropriate under the sentencing code as a whole. This court has consistently found that a substantial question is raised when the trial court holds that the deadly weapon enhancement is inapplicable to the sentence imposed. *See, e.g., Commonwealth v. Dotzman,* 403 Pa.Super. 325, 327, 588 A.2d 1312, 1314 (1991).

on during the commission of an offense. *It must do this.*
The court's discretion comes into play in imposing sen-
tence, only after it has determined the proper sentencing
guideline range.

*Commonwealth v. Dotzman, supra,* 403 Pa.Super. at 334,
588 A.2d at 1317 (emphasis in original). *See also Common-
wealth v. Brown,* 402 Pa.Super. 369, 587 A.2d 6 (1991).

■ Clearly, therefore, the court cannot decline to en-
hance the sentencing range if appellee possessed a deadly
weapon during the commission of the robbery of which he
was convicted here. No party disputes this principle. The
heart of the argument in the instant case is whether appel-
lee "possessed" a deadly weapon, i.e. a gun, during the
robbery. Additionally, we must determine whether the trial
court's belated and after-the-fact finding that "this defen-
dant did not have a weapon" was an abuse of discretion
which was unsupported by the record and in conflict with
the court's verdict of guilt. We conclude that, on the basis
of this record, the trial court abused its discretion in refus-
ing to apply the deadly weapon enhancement because the
record supports no other conclusion than that appellee
"possessed" a deadly weapon during the commission of the
robbery within the meaning of the deadly weapon enhance-
ment. Moreover, the trial court's attempt to "find" other-
wise at the sentencing stage constituted an abuse of discre-
tion.

We are guided in our determination by several consider-
ations. First, the legislature has provided us with a defini-
tion of "possessed" to be used in the context of an enhance-
ment decision. Thus, 42 Pa.C.S. § 2154(b) provides: "As
used in this section [regarding sentencing guidelines] the
term 'possessed' means on the defendant's person or within
his immediate physical control". This provision reflects a
limitation on the imposition of the deadly weapon enhance-
ment and precludes use of it in situations wherein only a
defendant's accomplice possesses the weapon and the weap-
on used is not within the defendant's immediate physical

control.[4] Our research has disclosed no cases which have applied the specific provision just cited or interpreted the meaning of "within his immediate physical control" in the context of applying the deadly weapon enhancement. Hence, we write on a matter of first impression.

We find that the deadly weapon enhancement was applicable to this case; either on the basis that appellee held a gun during the course of the crime or that the gun was within the immediate physical control of the appellee. At the outset, we note that at trial there was uncontradicted evidence that during the course of the robbery appellee had a gun "on [his] person." The only witness who gave specific testimony regarding the actions of this particular assailant was victim Kevin Whitehead. The victim's repeated and unequivocal testimony was that *all* the robbers had weapons when they approached him and the other victims and announced the "stick-up." It was at this point, with all the assailants acting in concert, that the robbery commenced. Thus, it is irrelevant that later when appellee literally relieved Kevin of his coat in the car, Kevin could not attest to whether appellee was holding a gun at the time. The robbery by then was long underway and the testimony was clear that appellee possessed a gun *during* its commission. Thus, the trial court's statement in its opinion that "the taking of property by this defendant ... did not involve the use of a weapon to threaten or place another in fear of serious bodily injury" flies in the face of the only evidence offered at trial regarding this defendant's involvement.

4. Commentary on the sentencing guidelines by Commission on Sentencing chairman John W. O'Brien includes the following explanation regarding the meaning of "possessed" in the context of enhancement provisions:

> The legislature thereby eliminated the application of the deadly weapon enhancement when the defendant's accomplice, not the defendant, possessed the deadly weapon. The statutory definition superseded the guidelines provisions for all cases sentenced on or after February 9, 1987. The amendment to § 303.4 reflects the new statute [42 Pa.C.S. § 2154(b)].

Moreover, we agree with the Commonwealth that the trial court's own verdict belies its assertion that appellee did not use a gun to perpetrate this robbery. Immediately following trial the court found appellee guilty of robbery, conspiracy and possession of an instrument of crime. The court also indicated that the robbery conviction was based on a conspiracy theory but did not explain the possession conviction on the same basis. This verdict made two things clear. First, the combination of the robbery and PIC convictions makes wholly untenable the trial court's assertion that the "taking of property by this defendant ... did not involve the use of a weapon". The only instrument which conceivably could support the PIC conviction was a gun. Moreover, in order to convict appellee of PIC, the court must have found beyond a reasonable doubt, that appellee possessed the gun with intent to use it for a criminal purpose. That purpose clearly was the taking of Kevin's [and the others'] property. If the robbery "did not involve the use of a weapon," appellee's conviction for PIC makes no sense. In our view, if appellee possessed a gun at any time during the course of the robbery, it is without significance that at the moment he actually "took" Kevin's jacket from his hands, appellee displayed no weapon. The use of the weapon, indeed numerous weapons, had already accomplished the intended purpose, which was to intimidate and coerce the victims into surrendering their property to the gunmen.

In addition, Kevin's testimony was uncontradicted that when he was surrounded by appellee and two accomplices inside the car, two of the accomplices had weapons in their hands. One of the gunmen was in the front seat inches away from appellee. The question then is whether a gun was within the immediate physical control of appellee. Even if we were to assume that appellee did not possess a gun at the point Kevin was cornered, assaulted and robbed inside the car, we would conclude that a gun was within appellee's immediate physical control. Therefore assuming appellee did not have a gun "on [his] person" in the car, it is

hard to imagine weapons more within his immediate physical control than were the weapons of his companions at that moment. Appellee had ready access to the physical possession of a gun, under the circumstances described here.

Surely, the intent of the legislature, in enacting section 2154(b) and specifying the definition of "possession" for weapon enhancement purposes, was to assure that an appropriate nexus existed between the use of the gun and the defendant's capability to exercise control over it during the crime.[5] The definition of "possession" was narrowed in order to limit the application of the enhancement provisions to only those defendants who actually had use of a gun or other deadly weapon during the commission of a crime.

There is no question that, under the particular circumstances of this robbery, appellee had use of a deadly weapon in order to commit the offense. The fact that at the time of the actual "taking" no witness saw a gun in his hand does not detract from this conclusion. The weapons were within arm's reach of appellee, were within his immediate physical control, and were used to perpetrate this robbery. Clearly, the deadly weapons enhancement was intended to address, and redress, situations like this.

■ Finally, the Commonwealth argues that the trial court is not permitted to "recast" its verdict at the sentencing stage by "finding" that appellee "did not have a gun", where this finding is wholly inconsistent with its previously entered verdict and unsupported by the evidence at trial.

5. In *Commonwealth v. Taylor,* 346 Pa.Super. 599, 500 A.2d 110 (1985) (en banc), this court held that a weapon enhancement provision which required mere "possession" without requiring that some nexus be established between possession, weapon and the crime, is unconstitutionally void for vagueness. Judge Tamilia, in the majority opinion, reasoned:

> Thus, if the weapon enhancement provision were to be construed to define possession as physical control for the purpose of immediate use, it would meet the test of constitutionality more clearly than the broader concept of possession, which could mean control even in a remote place, with neither intent nor capability of use at the time the crime charged was being committed.

346 Pa.Super at 616, 500 A.2d at 119.

We agree. The trial court's formulation, given the circumstances of the instant case, was an attempt to change its original verdict in order to avoid the dictates of the sentencing code. This is not permitted. As this court recently stressed:

> [If] the trial court was attempting to enter a verdict different than that which it entered [originally], we would be compelled to reject any such alteration. An attempt to modify or explain, at this late stage, an already clear verdict must be ineffective.

*Commonwealth v. Reading,* 412 Pa.Super. 239, 247, 603 A.2d 197, 201 (1992) (citations omitted).

 We conclude that the trial court erred in not applying the deadly weapon enhancement in determining the correct sentencing range for appellee. While the sentencing code confers discretion upon the trial court to fashion a sentence outside the guidelines, the court must nevertheless begin from the correct starting point and thereafter must place adequate reasons for deviation on the record. We reiterate that, where it is applicable, the trial court lacks the discretion to refuse to apply the deadly weapon enhancement. *See Commonwealth v. Scullin,* 414 Pa.Super. 442, 607 A.2d 750 (1992). Here, the deadly weapon enhancement was applicable to determine the correct sentencing range under the guidelines. Since the trial court failed to consider the correct sentencing range, we vacate the sentence and remand the case for resentencing with the deadly weapon enhancement taken into account.

The judgment of sentence is vacated and the case is remanded for resentencing in accordance with this opinion. Jurisdiction is relinquished.

McEWEN, J., concurs.