**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael L. HATCHER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1999.

Filed Feb. 8, 2000.

John D. Mac Veigh, Asst. Public Defender, York, for appellant.

Amy W. Ehrhart, Asst. Dist. Atty., York, for the Com., appellee.

Before FORD ELLIOTT and HESTER, JJ., and CIRILLO, President Judge Emeritus.

HESTER, J.:

¶ 1 Michael Hatcher appeals the April 19, 1999 judgment of sentence of five and one-half to eleven years imprisonment imposed following his conviction of aggravated assault and reckless endangerment. We affirm.

¶ 2 The record reveals the following. On February 10, 1998, Appellant, Timothy King, and Samuel Harris approached Shawn McArthur and started punching him in the face. At some point during the assault, King pulled out a handgun and began beating the victim with the butt of the gun. Appellant and Harris continued to strike the victim while King was using the gun. During the assault, King and Harris passed the gun back and forth, each man striking McArthur with the butt-end of the gun.

¶ 3 Appellant never touched the gun; he did continue to punch and kick the victim while King and Harris used the pistol. Near the end of the assault, Appellant stated, "Whoa, whoa, whoa" to the other assailants. N.T. Trial, 3/1/99, at 42. This statement did not cause King and Harris to relent. Instead, the assault continued until the victim's friend, Robert Cammick, pled for help from neighbors near the scene of the assault.

¶ 4 At some point after Cammick yelled for help, Appellant, King, and Harris fled the area. The police arrived, and the victim was immediately transported by ambulance to York Hospital. He remained in the hospital for two days due to the severity of his injuries.

¶ 5 Appellant's jury trial began on March 1, 1999, and concluded with a guilty verdict on March 2, 1999. He was sentenced on April 19, 1999, and it is from this sentence that he appeals. Appellant raises two issues on appeal. First, Appellant contends that the trial court improperly admitted graphic photographs into evidence. Second, Appellant argues it was error for the sentencing court to impose the deadly weapon enhancement to his sentence.

¶ 6 Appellant contends that the trial court improperly permitted the Commonwealth to introduce photographs that graphically demonstrated wounds suffered by the victim as well as his bloody clothing. This Court has restated the law regarding the admission into evidence of potentially prejudicial photographs:

The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First, a court must determine whether the photograph[s are] inflammatory. If not, [they] may be admitted if [they] ha[ve] relevance and can assist the jury's understanding of the facts. If the photograph[s are] inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible.* (emphasis added).

*Commonwealth v. Marinelli*, 547 Pa. 294, 321, 690 A.2d 203, 216 (1997), quoting *Commonwealth v. Chester*, 526 Pa. 578, 591–92, 587 A.2d 1367, 1373–74 (1991), *cert. denied*, 502 U.S. 849, 959, 112 S.Ct. 152, 422, 116 L.Ed.2d 117, 442 (1991); *see also Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221 (1996); *Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (1994). We will reverse the decision of the court below to admit the photograph[s] into evidence only upon an abuse of discretion. *Marinelli*, 547 Pa. at 321–23, 690 A.2d at 217; *Commonwealth v. McCutchen*, 499 Pa. 597, 454 A.2d 547 (1982). We will find an abuse of discretion only when the essential evidentiary value of the photograph[s are] clearly outweighed by the inflammatory effect the picture[s] will have upon the minds and passions of the jurors. *Rivers*, 537 Pa. at 406–08, 644 A.2d at 716, citing *Chester, supra*.

*Commonwealth v. LeGares*, 709 A.2d 922, 924 (Pa.Super.1998).

¶ 7 Instantly, while Appellant apparently recognizes the two-step analysis applicable to the admission of photographs, Appellant develops his topic no further. With respect to the inflammatory nature of the photographs, the argument is entirely absent. At most, it indicates that the pictures depicted wounds suffered by the victims and characterizes them as graphic.

■ ¶ 8 Our review of the record reveals one photograph of the scene of the beating, and five photographs of the victim's wounds. The crime scene photograph is not graphic. With regard to the remaining five photographs, two of the photographs appear to have been taken the day the victim arrived at the hospital, and the remaining three depict the victim several days later. While we find these photographs somewhat graphic, we also believe they were relevant in determining the seriousness of the wounds. Where the probative value of the photographs outweighs the potential prejudice, the photographs are properly admitted. *See Com-*

*monwealth v. Brewington*, 740 A.2d 247 (Pa.Super.1999). Accordingly, this claim of error must fail.

■ ¶ 9 Appellant next questions the sentencing court's application of the deadly weapon enhancement. This issue relates to the discretionary aspects of sentencing. As required by Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), Appellant has included in his brief a separate statement of reasons relied upon for this appeal. We consistently have deemed similar claims to present a substantial question for review. *See Commonwealth v. Davis*, 737 A.2d 792 (Pa.Super.1999), *see also, Commonwealth v. Bowen*, 417 Pa.Super. 340, 612 A.2d 512 (1992). We therefore address the merits of Appellant's sentencing claim.

¶ 10 Appellant alleges the court misapplied the deadly weapon possession enhancement since the gun never was in his possession.

Before the deadly weapon enhancement can be applied to a guideline sentence, the sentencing judge must first determine whether the defendant possessed a deadly weapon during the commission of the current conviction offense. 204 Pa.Code § 303.4(a)(March 1992). For purposes of this section, the term "possessed" is statutorily defined to mean that the firearm was "on the defendant's person or within his immediate control." 42 Pa.C.S.A. § 2154(b). As construed by this court, "this provision reflects a limitation on the imposition of the deadly weapon enhancement and precludes use of it in situations wherein only a defendant's accomplice possesses the weapon and the weapon used is not within the defendant's immediate physical control." *Commonwealth v. Bowen*, 417 Pa.Super. 340, 346–47, 612 A.2d 512, 516 (1992).

*Commonwealth v. Greene*, 702 A.2d 547, 552 (Pa.Super.1997).

¶ 11 In *Greene*, we declined to apply the deadly weapon enhancement. In *Greene*,

three co-conspirators were found guilty of armed robbery. Only one of the co-conspirators entered the jewelry store they were attempting to rob. Further, of the three men, only this individual wielded a weapon in the commission of the offense. Accordingly, when the defendant received a twelve-month enhancement due to his co-conspirator's use of a weapon during the robbery, he challenged the application of the weapons enhancement.

¶ 12 In declining to apply the enhancement, we stated: "Application of the proper authority compels us to conclude that the deadly weapon enhancement is inapplicable in this case because the gun was neither on appellant's person nor within his immediate physical control at any time during the perpetration of the robbery." *Id.* at 553. While *Greene* appears similar to the case at bar in that Appellant never had actual possession of the deadly weapon, *Greene* is readily distinguishable.

¶ 13 In *Greene,* the co-conspirators were waiting in a car several blocks from the scene of the robbery. The defendant did not enter the jewelry store with the gun-wielding co-defendant. In the case at bar, however, Appellant was shoulder-to-shoulder with his armed co-conspirators, who were passing the gun between themselves. Indeed, the Commonwealth argues that due to Appellant's proximity to his co-conspirators, the case of *Commonwealth v. Bowen* should be applied.

¶ 14 In *Commonwealth v. Bowen, supra,* six co-conspirators robbed three unarmed men outside a Philadelphia restaurant. The perpetrators all brandished guns and commenced the assault by announcing, "[T]his is a stick-up." *Id.* at 513. One of the victims climbed into the backseat of his car. He was followed by three assailants, two of whom climbed into the backseat on either side of the victim and visibly displayed firearms. A third assailant demanded the victim's money and jacket from the front seat. The victim testified that he could not see whether this assailant had a gun in his possession at this

time. However, the victim did testify that earlier, all six assailants were armed at the onset of the robbery. We held that "the deadly weapon enhancement was applicable to this case; *either* on the basis that appellee held a gun during the course of the crime *or* that the gun was within the immediate physical control of the appellee." *Id.* at 515 (emphases added).

██ ¶ 15 Appellant argues that it is clear that he never was in possession of the handgun used in the beating of the victim. Appellant reasons that this fact precludes the deadly weapon enhancement from being used in his sentencing. This assumption is incorrect. The trial court correctly stated that enhancement was proper because the handgun used by King and Harris was in close physical proximity to Appellant, thus triggering the "within immediate physical control" provision of the statute.

¶ 16 We find the following language in *Bowen* instructive:

Even if we were to assume that appellee did not possess a gun at the point Kevin was cornered, assaulted and robbed inside the car, we would conclude that a gun was within appellee's immediate physical control. Therefore assuming appellee did not have a gun "on [his] person" in the car, it is *hard to imagine weapons more within his immediate physical control than were the weapons of his companions at that moment.*

. . . .

The weapons were *within arm's reach* of appellee, were within his immediate physical control and used to perpetrate this robbery. Clearly, the deadly weapons enhancement was intended to address, and redress, situations like this.

*Bowen,* at 516 (emphasis added).

¶ 17 While we are careful not to expand upon the statutorily provided deadly weapon enhancement, we must follow the plain language of the statute. Appellant was shoulder-to-shoulder with the other two assailants, who handed the gun back and

forth. Appellant easily could have walked out and taken possession of the gun at any time. If the handgun used in this incident is not deemed to be within Appellant's immediate physical control, we cannot imagine a case where this provision could apply absent actual physical possession. The statute does not contain such a requirement. Accordingly, we affirm the judgment of the trial court.

¶ 18 Judgment of sentence affirmed.