J-S38040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                     :            PENNSYLVANIA
                                                     :

               v.                                 :
                                                     :
                                                      :

JOSEPH SHANE COLBEY                 :
                                                      :
               Appellant            :       No. 594 MDA 2020

Appeal from the Judgment of Sentence Entered December 31, 2019
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000153-2019

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED SEPTEMBER 09, 2020**

Appellant Joseph Shane Colbey appeals the judgment of sentence entered by the Court of Common Pleas of Fulton County after a jury convicted Appellant of conspiracy to commit robbery, conspiracy to commit burglary, and theft by unlawful taking. Appellant claims there was insufficient evidence to support his convictions and asserts that the trial court erred in sentencing him pursuant to the Deadly Weapon Enhancement (Possessed) sentencing matrix. After careful review, we affirm.

Appellant and his co-defendants, Kathrine Ann Marie Beckmann ("Kathrine") and Johnathan Wayne Colbey ("Johnathan"), were charged with aforementioned offenses in connection with the October 8, 2017 attack of

---

[*] Former Justice specially assigned to the Superior Court.

Christopher Murphy (hereinafter "the victim").[1]  Appellant, Kathrine, and Johnathan were tried together at a jury trial held on November 20, 2019.

In October 2017, the victim, who owned mobile carnival game trailers, arranged to bring two trailers to the Fulton Fall Festival and operate various games such as basketball throw, dart throw, and ring toss.  Notes of Testimony ("N.T."), 11/20/19, at 32-33.  The victim would travel to various events on the road throughout the year on a "show circuit."  N.T. at 32.

Several weeks before the Fulton Fall Festival, the victim met another concessions operator, Roger Eric German, who the victim knew as "Eric," at a fair in Bloomsburg, Pennsylvania.  N.T. at 34.  German informed the victim that he knew several individuals who were looking for work and would be interested in helping the victim run his carnival games at the Fulton Fall Festival.  N.T. at 35.

On Thursday, October 5, 2017, the day before the Fulton Fall Festival started, the victim arrived to set up his carnival games.  N.T. at 35, 37.  The victim recalled that Eric arrived in a red Jeep with a Texas license plate that "stuck out" because it had tires on top and a diamond plate box.  N.T. at 36-37.  Eric brought three individuals that the victim knew at that point only by their nicknames – "Katie," "Shane," and "Tiny."  N.T. at 36.  The victim later identified Katie as Kathrine, Shane as Appellant, and Tiny as Johnathan.  N.T.

---

[1] We refer to Appellant's co-defendants by their first names as Appellant and Johnathan Colbey are brothers who share the same last name.

at 97-98. Kathrine is Appellant's fiancée and Appellant and Johnathan are twin brothers. N.T. at 172.

The victim testified that he became uncomfortable with Eric and his associates after the victim inadvertently showed Eric that he was carrying a large wad of cash with a rubber band around it (his savings from the show circuit) after a customer needed change for a larger bill. N.T. at 37. The victim claimed to have overheard Eric say to his companions, "don't worrying about stealing while we're here. We'll get it at the end." N.T. at 37. The victim acknowledged that he had approximately $8,000 in his possession, which he had earned throughout the entire fair season. N.T. at 38-39, 55.

At the fair's conclusion, on Sunday, October 8, 2017, the victim began disassembling the trailer games, which involved tearing down "stick joints" or tents that were made out of "2 x 4" planks. N.T. at 39. At the end of the evening, the victim went to lay down in one of his trailers which was set up as a living area and separated from the rest of the trailer by a curtain. N.T. at 42. The victim allowed Appellant, Kathrine, and Tiny to sleep in part of his trailer so they would not have to sleep outside. N.T. at 41.

The victim recalled waking up and seeing Kathrine standing over him with two knives and a cell phone. N.T. at 41-42. After Kathrine told the victim "we're here to rob you," the victim fought back, grabbed Kathrine, and "threw her down." N.T. at 41-42. Kathrine subsequently yelled "help me, guys, help me." N.T. at 42. When the victim turned around to look if anyone was coming,

he was hit three times with 2 x 4 planks. N.T. at 42-43. The victim admitted that he did not see the individual who hit him. N.T. at 49.

When the victim eventually got up and was able to regain focus, he observed Eric, Johnathan, Kathrine, and Appellant run to the red Jeep, jump in, and take off "like a bat out of hell." N.T. at 43-44. The victim claimed that after the attack, he was missing his canvas apron that contained his savings. N.T. at 44-45. The victim called the police and then was transported to the hospital, where he was treated for a swollen eye, a head contusion, and a broken facial bone. N.T. at 45-49, 95, 125. Thereafter, the victim was able to identify all four individuals after accessing Eric's Facebook profile, which listed Johnathan, Kathrine, and Appellant on his friends list. N.T. at 50-51.

After Johnathan was arrested in Arkansas and charged with these crimes in May 2019, Kathrine called the McConnellsburg Station of the Pennsylvania State Police, asking if there was a warrant for her arrest. This phone call, which was recorded, was played for the jury. N.T. at 113-14 (Commonwealth's Exhibit 5). On the recorded phone call, Kathrine indicated to the dispatcher that her brother-in-law had been arrested for a crime that she had actually committed in robbing a man in Fulton County in October 2017. Kathrine indicated that she did not want her brother-in-law to take the blame for something she did. Kathrine gave the dispatcher her full name, contact information and address in Texas and indicated she would cooperate in her prosecution.

At trial, Kathrine recanted her confession as she asserted that Eric German had coerced her into calling the state police and asserting that she had acted alone in robbing the victim. N.T. at 186-87. Kathrine indicated that on the last night of the festival, she intended to leave the fairgrounds with Eric, Johnathan, and Appellant after the victim did not pay her for working at the fair. N.T. at 174-75. Appellant indicated that when she went into the victim's trailer to get her jacket, the victim attacked her. N.T. at 176-79. After Kathrine escaped the victim's trailer, she went and sat in the red Jeep. N.T. at 180. Kathrine indicated that Eric entered the Jeep fifteen minutes later with a ripped shirt and an angry demeanor. N.T. at 180. Kathrine admitted taking methamphetamine that evening but denied that she had hurt the victim. N.T. at 173.

At the trial's conclusion, the jury convicted Appellant and Johnathan of conspiracy to commit robbery, conspiracy to commit burglary, and theft by unlawful taking, but acquitted them of aggravated assault, robbery, and burglary. The jury convicted Kathrine of burglary, conspiracy to commit robbery, conspiracy to commit burglary, and theft by unlawful taking, but acquitted her of aggravated assault and robbery.

On December 31, 2019, the trial court sentenced Appellant to 63 months to 126 months' incarceration for the conspiracy to commit robbery charge and a consecutive term of 9 to 48 months' incarceration for the theft by unlawful taking charge. The trial court applied the Deadly Weapon Enhancement (Possessed) sentencing matrix for these charges and imposed no further

- 5 -

sentence on the conspiracy to commit burglary charge. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues on appeal:

1) Did the trial court err by finding that there was sufficient evidence to support [Appellant's] convictions for theft, criminal conspiracy to commit robbery, and criminal conspiracy to commit burglary?

2) Did the trial court err or abuse its discretion in sentencing [Appellant] pursuant to the Deadly Weapon Possessed sentencing matrix instead of the basic sentencing matrix?

Appellant's Brief, at 4 (issues reordered for review).

Appellant first challenges the sufficiency of the evidence supporting his convictions. Our standard of review is well-established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa.Super. 2019) (quoting *Commonwealth v. Brown*, 186 A.3d 985, 990-91 (Pa.Super. 2018)).

Appellant claims that he should have been acquitted of the conspiracy charges as there was no evidence that he agreed to engage in conduct to further the crime or that he agreed to aid the planning or commission of the crime in any way. While Appellant admits the victim saw him running to the Jeep after the attack occurred, Appellant asserts that he "could have run to the car for any number of reasons including being told to by the others present to do so without knowing the extent of their actions, or simply being startled to do so by the others doing so and following suit so as to not be left behind, as he had no other means of tra[n]sportation." Appellant's Brief, at 12. In addition, Appellant claims that he could not be convicted of theft by unlawful taking as the victim did not testify that he removed money from the trailer or was present at the trailer when the attack occurred.

To sustain a conviction for the crime of conspiracy, the Commonwealth must show a defendant entered into an agreement to commit or aid in an unlawful act with another person, that he and that person acted with shared criminal intent, and that an overt act was taken in furtherance of the conspiracy. *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa. Super. 2013) (*en banc*); 18 Pa.C.S.A. § 903.

Further, with respect to the crime of conspiracy, this Court has provided:

> [t]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for

conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa.Super. 2018) (citation omitted)). In addition, a person is guilty of theft by unlawful taking where "he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

In reviewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find the prosecution presented sufficient evidence to sustain Appellant's convictions for conspiracy and theft by unlawful taking. The victim testified that he awoke in his trailer to see Kathrine holding two knives and asserting that "we're here to rob you." Just moments after the victim and Kathrine struggled in the trailer, Kathrine called out for help and was immediately assisted by an individual who hit the victim with a 2 x 4 plank three times in the head.

Given the speed with which this individual responded to Kathrine's cry for assistance, the jury could have reasonably inferred that the individual was lying in wait to facilitate Kathrine's theft of the victim's money from the trailer.

Just moments after the attack, the victim observed Kathrine, Johnathan, Appellant and Eric running at once to the Jeep and speeding away from the fairgrounds in the early morning hours. Kathrine admitted that Appellant was her fiancée and Johnathan was Appellant's twin brother.

Given the conduct of the parties and the close relationship between Kathrine and Appellant, the circumstantial evidence supports the prosecution's theory that Appellant was part of a conspiracy to break into the victim's trailer while he was sleeping to steal his cash savings. As a result, there is no merit to Appellant's challenge to the sufficiency of the evidence supporting his conspiracy convictions.

Moreover, Appellant's challenge to his conviction for theft by unlawful taking similarly fails. While Appellant claims that there was no evidence that he stole the victim's money, he can be held liable for Kathrine's actions as her co-conspirator. **See Johnson**, **supra** (clarifying that "[e]ven if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy"). Accordingly, the trial court did not err in denying Appellant's challenges to the sufficiency of the evidence supporting his convictions.

Second, Appellant argues that the trial court erred in sentencing him using the Deadly Weapon Enhancement ("DWE") instead of the basic sentencing matrix. The trial court employed the DWE based on the possession

(not use) of a deadly weapon as set forth in 204 Pa.Code § 303.10(a) which

provides:

**§ 303.10. Guideline sentence recommendations: enhancements.**

(a) Deadly Weapon Enhancement.

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.

204 Pa.Code § 303.10(a) (emphasis in original). For the purposes of the

sentencing guidelines, "possessed" is defined as "on the defendant's person

or within the defendant's immediate control." 42 Pa.C.S.A. § 2154(b).

Specifically, Appellant asserts that the prosecution did not prove that he

was the individual that possessed a deadly weapon in the attack.[2] In

addressing a similar argument in **Commonwealth v. Matthews**, 196 A.3d

242, 252–53 (Pa.Super. 2018), this Court held that a gun used by a

---

[2] Appellant does not dispute the trial court's determination that the knives that Kathrine brandished and the 2 x 4 plank used to attack the victim were deadly weapons.

defendant's co-conspirator was within the defendant's immediate control. In that case, this Court found the trial court correctly applied the DWE (possessed) when the prosecution proved that Matthews' co-conspirator held a deadly weapon against the victim's ribs while Matthews rifled through his pockets. This Court also cited to additional precedent in which this Court held that a defendant in close physical proximity to an armed co-conspirator can be sentenced pursuant to the DWE (possessed) matrix.

> In several cases, we have held that a gun used by a defendant's co-conspirator was within the defendant's immediate control. For instance, in **Commonwealth v. Bowen**, 417 Pa.Super. 340, 612 A.2d 512 (1992), the defendant was one of six persons who assaulted the victims. Some, possibly all of the assailants had guns. **Id.** at 513–14. We held that the sentencing court erred in failing to apply the DWE for possession of a weapon, because the defendant either possessed a gun or was "inches away" from one of the gunmen who participated in the crime. **Id.** at 515–16.
>
> Likewise, in **Commonwealth v. Hatcher**, 746 A.2d 1142 (Pa.Super. 2000), the defendant and two co-conspirators approached the victim and started punching him. During the assault, one of the co-conspirators pulled a handgun and beat the victim with the butt of the gun. **Id.** at 1143. Although the defendant never held the weapon, he was in "close physical proximity" to the co-conspirator who used the gun. **Id.** at 1145. That was sufficient to demonstrate possession within the meaning of Section 2154(b). **Id.**
>
> Further, in **Commonwealth v. Pennington**, 751 A.2d 212 (Pa.Super. 2000), the defendant was one of five co-conspirators involved in a robbery. One man held the victim at gunpoint while the others kicked him, punched him, and searched his pockets. **Id.** at 214–15. This Court, citing **Bowen** and **Hatcher**, concluded the trial court properly applied the DWE because the gun was within the defendant's immediate control. **Id.** at 216–17. In contrast, this Court held the DWE did not apply to a defendant who was waiting in a getaway car several blocks from a jewelry store in which his co-conspirator conducted an armed

- 11 -

robbery. *Commonwealth v. Greene*, 702 A.2d 547, 552–53 (Pa.Super. 1997).

*Matthews*, 196 A.3d at 252.

Consistent with this precedent, we find that the trial court properly found that the evidence shows that either Appellant or one of his co-conspirators employed a deadly weapon against the victim to further their conspiracy in seeking to burglarize the victim's trailer and rob him of his savings. Appellant either was the individual who actually hit the victim's head with the plank or was in close proximity to his co-defendants who threatened the victim with knives and assaulted the victim. As a result, we conclude that the trial court correctly applied the DWE-Possessed matrix because at a minimum, Appellant was in close proximity to an armed conspirator and the weapon was within his immediate control. Accordingly, we find the trial court did not err in dismissing this claim.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/09/2020