J-S08029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JYZAH MICHAEL MORGAN | : | |
| | : | |
| Appellant | : | No. 477 MDA 2021 |

Appeal from the Judgment of Sentence Entered March 25, 2021
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0000936-2019

BEFORE: BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: MAY 16, 2022**

Appellant Jyzah Michael Morgan appeals from the judgment of sentence imposed following his jury trial and conviction for two counts each of aggravated assault and discharge of a firearm into an occupied structure, and single counts of tampering with evidence and conspiracy to commit aggravated assault.[1]   On appeal, Appellant challenges the discretionary aspects of his sentence, specifically, the application of the deadly weapon enhancement (DWE).  We affirm.

On February 18, 2019, Sheeneka Stokes was at her home on Lockhart Street in Wilkes-Barre with members of her family and Kristine Hagen, who was Stokes' home health nurse.  *See* N.T. Trial, 10/19/20, at 61, 65, 73. While in the living room in the front of the house, Stokes and Hagen heard

---

[1] 18 Pa.C.S. §§ 2702(a)(1), 2707.1(a), 4910(1), and 903(a)(1), respectively.

multiple gunshots and saw the window break. *Id.* at 64, 67. The assailants fired at least six shots at the house. *Id.* at 77-80. Stokes yelled for everyone to get down before she went upstairs and called the police. *Id.* at 64-66. No one was injured in the shooting, and Stokes did not know why anyone would shoot at her home. *Id.* at 65-66.

Following an investigation and review of video surveillance footage, the Wilkes-Barre City Police Department detectives identified Appellant as the driver and owner of the car involved in the drive-by shooting of Stokes' home. *Id.* at 44-59, 90-91. Detectives identified Onje Crowder as the front-seat passenger, and still photographs showed Crowder holding a firearm in his hand. *Id.* at 53-55.

The surveillance footage showed Appellant driving a Mitsubishi Lancer past the residence twice with "several minutes" in between passes. *Id.* at 103-104. On the first pass, Crowder appeared to have his hand cupped to his mouth, yelling something. *Id.* at 106. The Lancer backtracked and came from the opposite direction on the second trip. *Id.* at 104. On the second pass, the car did not change speeds or slow down. *Id.* at 107.

Detectives visited Appellant's home and observed the Lancer parked outside. *Id.* at 90-95. The Lancer had a spoiler in the video of the shooting, and when detectives executed a search warrant on the property, they recovered the spoiler in the garage. *Id.* at 90-94. Detectives also recovered a black North Face jacket from Appellant's bedroom that was similar to the jacket that Appellant wore in the surveillance footage. *Id.* at 92-93.

- 2 -

Detectives examined the vehicle and determined that it had a small interior, and the driver's and front passenger's seats were very close together. *Id.* at 108.

Crowder subsequently pled guilty to two counts of aggravated assault. *Id.* at 108. At Appellant's trial, Crowder testified that he is Appellant's cousin and that the two are very close. *Id.* at 130. Crowder admitted that he intended to shoot at the house on Lockhart Street. *Id.* at 127-31. Crowder believed a man named Jake with whom he had had an argument lived there, and Crowder wanted to frighten this man. *Id.* Crowder stated that he had hidden his gun under the passenger seat and had not told Appellant it was there. *Id.* at 127-28. Crowder testified that he yelled, "what's good?" out of the car window before firing the gun. *Id.* at 131-33.

Appellant testified on his own behalf and admitted to driving the Lancer on February 18, 2019. *Id.* at 138-40. Appellant stated that he and Crowder were sitting about an arm's length apart. *Id.* at 155. He claimed that he did not know that Crowder planned to shoot at anyone and did not see Crowder brandish the gun. *Id.* at 141-43. Appellant testified that when he heard "pops," he sped up because he did not know where the bullets were coming from, and thought that the shots were being fired at him. *Id.* at 143-44, 156. Appellant claimed that he did not see the gun at any point and did not realize what had happened until the shooting was reported in the newspaper the next day. *Id.* at 144.

On October 21, 2020, the jury convicted Appellant of all charges.

- 3 -

On March 3, 2021, the Commonwealth filed a motion seeking to amend the pre-sentence investigation (PSI) report to reflect the application of the DWE to counts one, two, and six, averring that the Luzerne County Adult Probation and Parole Department (LCAPP) had not applied any enhancements to the standard-range sentencing guidelines.[2]  **See** Commonwealth Mot. To Amend, 3/3/21, at 1-5.  At the sentencing hearing on March 24, 2021,[3] over Appellant's objection to the application of the DWE, the trial court granted the Commonwealth's motion to amend the PSI.[4]  **See** Trial Ct. Op., 7/22/21, at 1; N.T. Sentencing 3/24/21, at 3-4.  The trial court sentenced Appellant to an aggregate of sixty-six to one hundred thirty-two months of incarceration followed by twenty-four months of probation.  **See** Trial Ct. Op. at 1.  No post-sentence motions were filed.

---

[2] Amending the PSI, rather than the bills of information, is not the usual practice in the Commonwealth of Pennsylvania.  **See**, **e.g.**, **Commonwealth v. Taylor**, 500 A.2d. 110, 114-15 (Pa. Super. 1985) (observing that the District Attorney's office has the power to modify the information as it relates to complaint to conform to what it perceives to be its proof or determination of prosecutorial merit).  A PSI report is an informational document prepared by the probation department for the benefit of the parties and the court at sentencing.  **See** Pa.R.Crim.P. 702(a)-(b).  It is not an official charging document filed by the District Attorney's office.  However, no party has objected to the form of the modification and notice.  Accordingly, we will consider this issue on the merits.

[3] The sentencing order was not docketed until the following day, March 25, 2021.

[4] Counts one and two were for aggravated assault, and count six was for criminal conspiracy.

On April 9, 2021, Appellant timely filed a notice of appeal.  On April 12, 2021, the Luzerne County Public Defender's Office filed a motion for appointment of conflicts counsel, noting that it had been appointed to represent Appellant for purposes of his appeal, but, after filing the notice of appeal, discovered that it had previously represented a witness in the case. **See** Mot. for Appointment of Conflicts Counsel, 4/12/21, at 1-2.  The President Judge of the Luzerne County Court of Common Pleas granted the motion.  **See** Order, 4/12/21, at 1.  That same day, the trial court issued an order pursuant to Pa.R.A.P. 1925(b), and service was made on the Luzerne County District Attorney's Office and the Luzerne County Public Defender's Office.  **See** Order, 4/12/21, at 1.

On May 21, 2021, Appellant filed a statement of errors complained of on appeal *nunc pro tunc*, averring that after the Luzerne County Public Defender's Office filed a notice of appeal on his behalf, and a conflict required the appointment of new counsel.  **See** Rule 1925(b) Statement *Nunc Pro Tunc*, 5/21/21, at 1-2.  In the *nunc pro tunc* Rule 1925(b) statement, new counsel asserted that he had not received the trial court's Rule 1925(b) order.  **Id.** The trial court accepted Appellant's Rule 1925(b) statement *nunc pro tunc* and addressed his issue on the merits.  Trial Ct. Op. at 2.

On appeal, Appellant raises a single question for our review:

> Whether the trial court erred in permitting the Commonwealth to amend the [PSI report] to apply the [DWE] at sentencing.

Appellant's Brief at 1.[5]

Appellant contends that the trial court erred by applying the DWE, because Appellant did not use a weapon during the commission of the crime and the gun was not in his immediate physical control. *Id.* at 8-9. In support, Appellant claims that the gun was in the possession of Crowder and Appellant was unaware of its presence in the vehicle. *Id.*

Appellant's claim is a challenge to the discretionary aspects of his sentence. *Commonwealth v. Tavarez*, 174 A.3d 7, 10 (Pa. Super. 2017); *see also Commonwealth v. Kneller*, 999 A.2d 608, 613 (Pa. Super. 2010) (*en banc*) (stating that "a challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing").

Prior to addressing such a claim, we must determine

(1) whether the appeal is timely; (2) whether [the] [a]ppellant preserved his [or her] issue; (3) whether [the] [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Id.* (citations omitted); *see also* Pa.R.A.P. 2119(f).

Here, Appellant preserved his challenge to the discretionary aspects of his sentence by presenting his objections at the sentencing hearing, filing a

---

[5] Although Appellant's issue is phrased as a claim of error regarding the amendment of the PSI, the trial court's opinion, Appellant's brief, and the Commonwealth's brief treat the issue as though Appellant challenges the court's application of the DWE at sentencing. Accordingly, we will address this issue.

timely notice of appeal, and stating a claim of error in his Rule 1925(b) statement. ***See*** N.T. Sentencing 3/24/21, at 3-4; ***See*** Rule 1925(b) Statement *Nunc Pro Tunc*, 5/21/21, at 1-2.[6]

Appellant has also presented a substantial question for our review. ***See Tavarez***, 174 A.3d at 10–11 (stating that "a substantial question is raised where an appellant alleges his sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement"). ***Tavarez***, 174 A.3d at 10–11. Therefore, we will consider the merits of Appellant's claim.

It is well settled that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

_____

[6] Appellant's Pa.R.A.P. 2119(f) statement reads as follows: "Whether the trial court abused its discretion in application of the Deadly Weapon Enhancement and whether that presents a substantial question." Appellant's Brief at 2. The Rule 2119(f) statement should "specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated," as well as "what fundamental norm the sentence violates and the manner in which it violates the norm." ***Commonwealth v. Reynolds***, 835 A.2d 720, 733 (Pa. Super. 2003). Although Appellant's Rule 2119(f) statement does not comply with these requirements, we decline to find waiver because the Commonwealth has not objected to the boilerplate Rule 2119(f) statement and because Appellant states his claim with relative specificity in the argument portion of the brief. ***See***, ***e.g.***, ***Commonwealth v. Johnson***, 873 A.2d 704, 708 (Pa. Super. 2005).

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation and quotation omitted).

This Court has observed that:

The deadly weapon enhancement provisions of the Sentencing Guidelines provide that an enhancement "shall apply to each conviction offense for which a deadly weapon is possessed or used." 204 Pa. Code § 303.10(a)(4). The trial court may not disregard an applicable enhancement when determining the appropriate sentencing ranges. *Commonwealth v. Cornish*, [589 A.2d 718, 720 (Pa. Super. 1991)]. Further, "[i]t is imperative that the sentencing court determine the correct starting point in the [G]uidelines before imposing sentence." *Id.*; *see Commonwealth v. Diamond*, 945 A.2d 252, 259 (Pa. Super. 2008) ("[T]he sentencing court must correctly apply the [S]entencing [G]uidelines to reach the correct point of departure, before exercising its discretion to depart from the [G]uidelines in any particular case. These rules apply to the deadly weapons enhancement.") Thus, if "the trial court erroneously calculates the starting point under the [G]uidelines," we will vacate the judgment of sentence and remand for resentencing. *Commonwealth v. Scullin*, [607 A.2d 750, 754 (Pa. Super. 1992)].

*Tavarez*, 174 A.3d at 10–11.

Instantly, the trial court applied the enhancement for "possession" of a deadly weapon to Appellant's sentence for aggravated assault and conspiracy. *See* Trial Ct. Op. at 1. The "possession" enhancement provides, in relevant part, as follows:

(1) . . . [W]hen the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

> (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded . . .

204 Pa. Code § 303.10(a)(1)(i). The Sentencing Code defines "possession" as "[o]n a defendant's person or within the defendant's immediate physical control." 42 Pa.C.S. § 2154(f). Therefore, for the enhancement to apply, the trial court must determine that the offender had a deadly weapon within his immediate physical control during the commission of the offense. 204 Pa. Code § 303.10(a)(1)(i); 42 Pa.C.S. § 2154(f).

When applying the DWE in cases involving multiple co-defendants, this Court has explained:

> In several cases, we have held that a gun used by a defendant's co-conspirator was within the defendant's immediate control. For instance, in **Commonwealth v. Bowen**, [612 A.2d 512 (Pa. Super. 1992)], the defendant was one of six persons who assaulted the victims. Some, possibly all of the assailants had guns. **Id.** at 513–14. We held that the sentencing court erred in failing to apply the DWE for possession of a weapon, because the defendant either possessed a gun or was "inches away" from one of the gunmen who participated in the crime. **Id.** at 515–16.
>
> Likewise, in **Commonwealth v. Hatcher**, 746 A.2d 1142 (Pa. Super. 2000), the defendant and two co-conspirators approached the victim and started punching him. During the assault, one of the co-conspirators pulled a handgun and beat the victim with the butt of the gun. **Id.** at 1143. Although the defendant never held the weapon, he was in "close physical proximity" to the co-conspirator who used the gun. **Id.** at 1145. That was sufficient to demonstrate possession within the meaning of Section 2154(b). **Id.**
>
> Further, in **Commonwealth v. Pennington**, 751 A.2d 212 (Pa. Super. 2000), the defendant was one of five co-conspirators involved in a robbery. One man held the victim at gunpoint while the others kicked him, punched him, and searched his pockets. **Id.** at 214–15. This Court, citing **Bowen** and **Hatcher**, concluded the trial court properly applied the DWE because the gun was

within the defendant's immediate control. *Id.* at 216–17. In contrast, this Court held the DWE did not apply to a defendant who was waiting in a getaway car several blocks from a jewelry store in which his co-conspirator conducted an armed robbery. *Commonwealth v. Greene*, 702 A.2d 547, 552–53 (Pa. Super. 1997).

*Commonwealth v. Matthews*, 196 A.3d 242, 252 (Pa. Super. 2018).

In **Matthews**, this Court affirmed the trial court's application of the DWE where the evidence established that either the defendant or his co-conspirator held a deadly weapon against the victim's ribs while the other man held him from behind and rifled through his pockets. *Id.* at 252-53. The **Matthews** Court noted that the defendant either held the weapon **or** was "inches away" from his co-conspirator as he held the weapon during the robbery. *Id.* at 253 (emphasis added). Therefore, the Court concluded that the DWE was correctly applied because "at the very least, [the defendant] was in close physical proximity to an armed co-conspirator, and therefore, the weapon was within his immediate control." *Id.*

In the instant case, the trial court explained:

[Appellant] and Crowder were clearly in close physical proximity to each other, as they were seated next to each other in the front seats of a small car. Detective Stash testified that no more than a few feet separated the men at the time of the shooting. [Appellant] himself testified that the two were probably an arm's length apart while they were in the car together. Although the defense argued that the shooting itself happened too quickly for [Appellant] to be able to take possession of the gun, the event itself was not spontaneous. [Appellant] and Crowder drove in the car together and passed the home for the first time while Crowder shouted "What's good?" out the window. They then left for a short time, approached the home from the opposite direction and passed the home again. Crowder reached under the seat, pulled

- 10 -

the gun up from where he had it stashed underneath, turned out the window, and fired it multiple times[,] all within arm's length of [Appellant.][FN12] At least six shots were fired. Detective Stash testified that, during the vehicle's second drive past the property, it did not appear as if the car changed speeds, slowed down, or that [Appellant] applied the breaks. The jury apparently agreed with this interpretation. As [the trial court] pointed out at sentencing, "It seems to the [c]ourt that you have to brandish the gun before you can pull the trigger and actually fire it." As in *Hatcher*, *Bowen*, and *Matthews*, the gun in this case was within [Appellant's] "immediate physical control" and the DWE was applied appropriately.

> [FN12] Although [Appellant] denied that he knew that Crowder possessed the gun or intended to use it, the jury clearly disbelieved his testimony and found him guilty on all counts . . .

Trail Ct. Op. at 10 (citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court in applying the DWE to Appellant's sentence. *See Gonzalez*, 109 A.3d at 731. The trial court appropriately determined that Appellant was in "immediate physical control" of a deadly weapon during the commission of the crime because of his "close physical proximity to an armed co-conspirator." *Matthews*, 196 A.3d at 253; *see also Hatcher*, 746 A.2d at 1145; *Bowen*, 612 A.2d at 515-16. As the trial court observed in its footnote, the jury disbelieved Appellant's testimony. *Id.* at 10 n.12. For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/16/2022